Argued and submitted March 3, affirmed May 18, 1982

## JACKSON COUNTY et al,
*Respondents on review,*

*v.*

## BEAR CREEK VALLEY SANITARY AUTHORITY,
*Petitioner on review.*

(LUBA 80-090, CA 19535, SC 28143)

645 P2d 121

Manville M. Heisel, Medford, argued the cause for petitioner on review.

John L. Dubay, Jackson County Counsel, Medford, argued the cause and filed an answering brief for respondent on review Jackson County.

Robert E. Stacey, Jr., Portland, argued the cause and filed a response to the petition for review for respondents on review City of Ashland, League of Women Voters of Ashland, Citizens for a Livable Future and League of Women Voters of the Rogue Valley.

Mary J. Deits, Salem, filed a brief amicus curiae for Department of Land Conservation and Development in the Court of Appeals. With her on the brief were Dave Frohnmayer, Attorney General, John McCulloch, Jr., Solicitor General and William F. Gary, Deputy Solicitor General, Salem.

Michael H. Arant, Medford, filed a brief amicus curiae for the Special Districts Association of Oregon in the Court of Appeals.

LINDE, J.

## LINDE, J.

Jackson County adopted elements of a comprehensive land use plan that included policies concerning sewer extensions inconsistent with a plan previously adopted by Bear Creek Valley Sanitary Authority, which operates within Jackson County. The issue to be decided is whether the adoption of these policies exceeded the county's planning authority.

The sanitary authority adopted a sewer plan in 1976. In 1978 it entered into a cooperative agreement with the county for the joint planning of future levels of sewer service. In 1980, the county adopted as part of its comprehensive plan seven policies concerning sanitary service. The sanitary authority petitioned the Land Use Board of Appeals to invalidate this element of the county's comprehensive plan on the grounds, among others, that the county had no authority in preparing its plan to "usurp" the powers and responsibilities of special districts. The board accepted the contention that the county had exceeded its authority and invalidated five of the seven challenged policies without reaching the other grounds for the challenge.[1] On petition for judicial review by Jackson County

---

[1] Policy 1 establishes four levels of sanitation service permissible within Jackson County and specifies where each level of service is to be allowed. Conventional sewage collection and treatment as part of a regional sewage system is indicated for areas within an urban growth boundary. The same type of service is deemed appropriate for unincorporated areas only where a probable health hazard is deemed by the county to exist. On-site management (i.e., septic tanks) or small community waste disposal systems are deemed appropriate for new development outside urban growth boundaries. Remaining low density areas must use on-site disposal.

Policy 2 prohibits new sewer extension outside of any urban growth boundary except as allowed by Policy 1. Policy 3 expresses a commitment to allow infill development. Policy 4 prohibits new development outside of urban areas from connecting to existing sewer lines. Policy 5 prohibits new sewage lines from passing through lands designated for agricultural use unless no other reasonable route is available. Policy 6 provides that where sewer lines are extended through agricultural lands there will be a sewer assessment deferral for such lands. Policy 7 calls for a balancing of various interests so that "disproportionate" emphasis is not given to public facilities in determining whether to allow new development.

The Land Use Board of Appeals invalidated all policies except 3 and 7.

and other interested parties,[2] the Court of Appeals reversed the board's holding in this respect and remanded the proceeding to the board for consideration of the remaining issues. 53 Or App 823, 632 P2d 1349 (1981). In view of the importance of the counties' planning functions, we allowed review. We affirm the Court of Appeals.

Sanitary authorities and counties each have planning responsibilities imposed by law. The statute governing sanitary authorities provides:

> "As soon as practicable after the election of the first members of the board, the board shall make a study and survey of the existing sewage disposal facilities and systems in the authority and of its sewage disposal needs, both present and future, and prepare an overall coordinated plan for the authority which incorporates, as far as practicable, existing sewage disposal and drainage systems, future sewage treatment plants, including connecting trunk and lateral sewers, and future drainage systems. Such plan shall be revised from time to time as circumstances may require. In preparing the plan or revisions thereto, the board shall take into consideration expected fluctuations in population and in business and industrial activity."

ORS 450.825. This statutory directive antedates the enactment of the statewide comprehensive planning system in 1973. 1973 Or Laws ch 80. That enactment further superimposed on the legal authority of "special districts" the duty to "exercise their planning duties, powers and responsibilities" and to take actions affecting land use in accordance with the state-wide planning goals adopted under ORS chapter 197 by the Land Conservation and Development Commission (LCDC).[3] ORS 197.185. The same section also required that a special district enter into a "cooperative agreement" with the city or county in which it operates. Such a cooperative agreement was to list "the tasks which

---

[2] The City of Ashland, the League of Women Voters of Ashland, the League of Women Voters of the Rogue Valley and Citizens for a Livable Future became parties in this suit by formally participating in the proceedings before the board. The Special Districts Association of Oregon and the Department of Land Conservation and Development filed *amicus* briefs in the Court of Appeals.

[3] Under chapter 197, "special district" meant any unit of local government, other than a city or county, authorized and regulated by statute. ORS 197.015(10) (1979) (current version at ORS 197.015(15) (1981)).

the special district must complete in order to bring its plan or programs into conformity with the state-wide goals" and a "program to coordinate the development of the plan and programs of the district with other affected units of local government."[4] Thus special districts such as the sanitary authority have the responsibility to make plans for the performance of their functions, consistent with state-wide planning goals. But it is not the sanitary authority's planning responsibility that is at issue in the present proceeding, it is the county's.

Jackson County has the statutory duty to prepare and adopt a comprehensive plan consistent with the state-wide planning goals. ORS 197.175(2)(a). There is no doubt that the comprehensive plan must cover the subject of sewer systems. The disagreement concerns only whether the county is to develop its own policies governing such systems or only "coordinate" plans made by other responsible agencies.

Bear Creek Valley Sanitary Authority has maintained the latter position in different proceedings over the past six years. Its view was rejected by the Land Conservation and Development Commission in 1977.[5] On that issue, the sanitary authority relies primarily on the definition of "comprehensive plan" in ORS 197.015(5). Under the 1979 statute, that definition stated:

"(5) 'Comprehensive plan' means a generalized, coordinated land use map and policy statement of the governing body of a state agency, city, county or special district that interrelates all functional and natural systems and activities relating to the use of lands, including, but not limited to, sewer and water systems, transportation systems, educational facilities, recreational facilities, and natural resources and air and water quality management programs. 'Comprehensive' means all-inclusive, both in terms of the geographic area covered and functional and natural activities and systems occurring in the area covered by the plan. 'General nature' means a summary of policies and

---

[4] ORS 197.185 was amended in several respects in 1981 Or Laws ch 748, § 26. No question has been raised whether the Court of Appeals should have tested the board's order against the 1981 version, and the present decision does not depend on it.

[5] *Bear Creek Valley Sanitary Authority v. Jackson County,* LCDC Order No. 76-010 (Sept. 7, 1977).

proposals in broad categories and does not necessarily indicate specific locations of any area, activity or use. A plan is 'coordinated' when the needs of all levels of governments, semipublic and private agencies and the citizens of Oregon have been considered and accomodated as much as possible. 'Land' includes water, both surface and subsurface, and the air." [6]

The sanitary authority argues that the county's duty to prepare a "comprehensive plan" does not authorize it to do more than to "interrelate" and "coordinate" functions, systems, activities, and programs that are the responsibilities of other entities.

■      Ordinarily the function of a definition section is not to impose duties but to specify the meaning of the defined term whenever it appears elsewhere in the statute. *Chapman Bros. v. Miles-Hiatt Investments*, 282 Or 643, 646, 580 P2d 540 (1978). ORS 197.015 goes about this in a cumulative and somewhat confusing way. The first sentence specifies elements of a "comprehensive plan" as that term is used in the statute, including among other things "sewer and water systems." The second sentence states what is meant by saying that a "comprehensive plan" is "comprehensive." The third sentence confusingly defines a term, "General nature," which does not appear elsewhere in the definition of "comprehensive plan;" it therefore does not seem a part of that definition. The fourth sentence states that a plan is "coordinated," one of the characteristics of a "comprehensive plan," when the needs of governmental, "semipublic," and private agencies as well as individual citizens have been "considered and accommodated as much as possible." The cumulative effect of these sequential specifications may be to offer opportunities for arguments that a purported "comprehensive plan" is not properly "comprehensive," but they do not deny the county's authority to include an element of sewage disposal policies in its comprehensive plan in the first place.

In the opinion by which it invalidated the county's sewer policies, the Land Use Board of Appeals referred to positions asserted by the opposing sides in debating their

----

[6] ORS 197.015(5) was amended in 1981 to remove the reference to special districts. 1981 Or Laws ch 748, § 1.

own and the other's responsibilities. According to the board, the county believed that the sanitary authority's plan did not conform to the state-wide planning goals and that the authority's responsibility is to provide sewer lines that correspond to the policies adopted by the county as part of its comprehensive plan. The board expressed the view that "the county has read too narrowly the statutory authority given special districts to adopt plans relating to the provision of sewer service and has read too broadly the county's responsibility in adopting comprehensive plans and coordinating the plans of special districts." It saw further support for this conclusion in statutory provisions adopted in 1977 that require a special district in a county to enter into a cooperative agreement with the county for bringing the district's plans into conformity with the goals, ORS 197.185(2), and that direct a county to "coordinate all planning activities affecting land use within the county, including those of the county, cities, special districts and state agencies, to assure an integrated comprehensive plan for the entire area of the county." ORS 197.190. The board further cited provisions that bar an uncooperative special district from contesting the acknowledgment of the county's comprehensive plan by LCDC, ORS 197.254(2), and that subjects such a district's nonconforming plan to an enforcement order. ORS 197.320. The board concluded that the sewer policies at issue between the parties were within the responsibility of the sanitary authority, and that "a county does not have the power or authority to unilaterally take over the planning responsibilities of a special district just because the county does not believe that the special district's plan conforms to the applicable goal requirements." It therefore held that the county had exceeded its authority in adopting five of the seven challenged policies.

As stated above, this is the holding reversed by the Court of Appeals. Bear Creek Valley's own planning responsibilities are not at issue. The opinion of the Land Use Board of Appeals treated the allocation of responsibility between the sanitary authority and the county as a question of "either or," citing the responsibility of the sanitary authority for planning sewer systems as a reason for excluding such planning from the responsibility of the county. But that is not necessarily so. The duties assigned

to the two entities by the respective statutes can overlap. The Court of Appeals so concluded.

██ ██ As to the authority of the county under ORS 197.175(2), the court stated:

> "The policies adopted by the county relating to sewer services are, on their face, within the category of policies which the county is empowered to include within its comprehensive plan. ORS 197.015(5). . . . The policies are general in that they are not made applicable to specific tracts of land but are couched in 'broad categories.' Although LUBA characterizes them as being 'fairly specific,' they do not approach a level of specificity inappropriate for comprehensive planning."

53 Or App 823, 828. The court continued:

> "Although both the sanitary district and the county appear to have statutory authority to formulate policy concerning sewer services, we conclude that the sanitary district's policy-making role is subordinate to that of the county, and that the county was within its statutory authority in adopting the policies in question. We reach that conclusion because ORS 197.185(1) specifically requires special districts to exercise their planning duties 'in accordance with state-wide planning goals.' So must counties. ORS 197.175. To avoid a standoff between planning agencies, Goal 2 . . . requires that special district plans be consistent with the comprehensive plan of counties."

53 Or App 823, 829.[7] It is not impossible that different sewer system plans, one made by a special district and another by a county, might each satisfy the statewide planning goals.[8] Whether this element of the county's

---

[7] Goal 2, referred to in this quotation, binds the sanitary authority by virtue of ORS 197.185 to make plans "consistent with the comprehensive plans of cities and counties," at least until that goal or its interpretation itself is claimed to exceed LCDC's statutory authority. Compare *1000 Friends of Oregon v. LCDC*, 292 Or 735, 642 P2d 1158 (1982). That contention has not been briefed here.

[8] The Department of Land Conservation and Development states in its brief *amicus curiae:*

> "Given the facts that there are a number of ways to meet the goals, a county and special district's sewer plans may both meet the goals, yet consist of very different policies and result in different growth patterns. Furthermore, while a special district's plan may meet the goals, it may still be inconsistent with the county's comprehensive plan, which is in violation of Goal 2. . . .

> "The scheme which DLCD believes is intended by ORS chapter 197 and the goals essentially is that . . . if there is a disagreement between a county

comprehensive plan does so is properly determined by LCDC in the acknowledgment process, in which the special district's objections can be presented,[9] unless it is barred for failure to cooperate. ORS 197.251(3), (4). If a county's plan is acknowledged, Goal 2 may indeed call for the district's plans to conform to the wider comprehensive plan, but this case has not reached the stage for deciding that issue.

.    As previously stated, the Court of Appeals remanded the case to the Land Use Board of Appeals for consideration of other issues that the board had not reached. The court's decision is affirmed.

---

and a special district which cannot be resolved by a coordination agreement, both proceed to develop their plans. The conflict is then resolved by LCDC at the time it considers acknowledgment of the county's plan keeping in mind that the county has the authority to make ultimate *policy* decisions."

The *amicus* brief by the Special Districts Association of Oregon presents the argument that it is inefficient and wasteful planning to restrict sewer and similar services as a means of restricting future land development instead of using zoning and other direct land use controls for that purpose, and that the useful life and therefore planning projections for infrastructure installations such as sewers extends beyond the period for which land use plans are made. These policy arguments may be made to LCDC in the first instance; they do not persuade us that the legislature limited the counties in their comprehensive planning to incorporating or "coordinating" district plans but to draft no alternative plan elements of their own.

[9] The Court of Appeals stated:

"In the situation contemplated by ORS 197.254(2), then, the county must formulate its *own* sewer policies, and the special district must coordinate its plan with that of the county. Not only does this imply the county's statutory authority to do so, but it also suggests by implication that goal conflicts between districts and counties may be resolved at the acknowledgment phase when the district is *not* precluded from raising objections. Conceivably, both the county and district plans may be found by LCDC to comply with the statewide planning goals, and although we need not resolve that problem here, Goal 2 presumably would resolve it."

53 Or App 823, 830-31.