Argued and submitted December 2, 2002, reversed and remanded with
instructions in part; otherwise affirmed March 20, 2003

Julie PERRI,
*Appellant,*

*v.*

CERTIFIED LANGUAGES INTERNATIONAL, LLC,
an Oregon limited liability company,
*Respondent.*

0006-05611; A114312

66 P3d 531

77-a

Craig A. Crispin argued the cause for appellant. With him on the opening brief were Patty T. Rissberger and Crispin & Associates. On the reply brief were Patty T. Rissberger and Crispin & Associates.

Roger Hennagin argued the cause for respondent. With him on the brief was Roger Hennagin, P.C.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

BREWER, J.

## BREWER, J.

After defendant terminated her services, plaintiff brought this action for damages and other relief based on defendant's alleged violations of Oregon and federal minimum wage and overtime laws. ORS 653.010 - 653.261; Fair Labor Standards Act (FLSA), 29 USC §§ 201 - 219 (2000). Plaintiff also asserted claims under Oregon and federal law that defendant had unlawfully discharged her from employment in retaliation for her complaints concerning the minimum wage and overtime violations. ORS 652.355; 29 USC § 215(a)(3) (2000). The trial court granted summary judgment to defendant on plaintiff's minimum wage and overtime claims and on a portion of each of her retaliation claims, and the court granted a directed verdict for defendant on the remaining portions of plaintiff's retaliation claims. Plaintiff appeals from those rulings. We reverse and remand in part and otherwise affirm.

Plaintiff worked for defendant's interpretive services business during the day as an administrative assistant, and she also worked for defendant on certain week nights and weekends as a telephone operator.[1] As a telephone operator, plaintiff worked at home one or two week nights as well as one 24-hour shift per weekend. Three other operators also worked for defendant. Only one operator worked per shift. Operators received telephone requests for interpreters, took messages, and assigned interpreters from a list provided by defendant. Defendant paid the operators a flat fee of $30.00 per weeknight shift, $60.00 per weekend shift, and $70.00 per holiday weekend shift, plus $1.50 per dispatch, $1.00 per message taken, and $.25 per call that they connected to facilitate telephonic interpretive services.

Plaintiff and the other operators became concerned that their rate of compensation was not commensurate with the number of hours that they worked. On March 15, 2000,

---

[1] As pertinent to the retaliation claims, the evidence in the summary judgment record is, for all practical purposes, identical to the material evidence adduced at trial. Accordingly, in summarizing the evidence, we make no distinction between the trial and summary judgment records.

on behalf of all of the operators, plaintiff sent the following e-mail to defendant's chief executive officer (CEO):

"Night operators current compensation is as follows:
M-F $3.33 / hour ($30.00 per shift from 10:00pm - 7:00am)
Sat & Sun $2.50/hr or $2.92 / hr. ($60.00 or $70.00 per shift)
Other compensation includes $.25 per call, $1.00 per message, & $1.50 per dispatch.

"Due to a significant increase in work load, & the obviously lean current scale, please consider the following pay structure to be effective immediately.
Weekdays (Monday through Friday from 10:00pm to 7:00am the following morning) compensation shall be a flat fee of $50.00 per shift. Saturday and Sunday shall pay a flat fee of $132.00 for a 24 hour shift beginning 8:00am and ending the following morning at 8:00am. Holiday pay to be negotiated on a case by case basis. Payment for night operator work shall be due weekly for the previous week. [Defendant] will continue to pay all phone expenses associated with night operations. A prompt response would be in everyone's best interest. Thank you."

Plaintiff testified that she broke down the compensation on an hourly basis because she wanted to demonstrate that the night operators were not being paid at least a minimum wage rate. She also testified that she based her proposal on a rate of $5.50 per hour, which, she believed, was the legal minimum wage at the time.

Not having received a response, on March 16, plaintiff sent another message to the CEO:

"I need an answer to the night op[erator] pay issue by tomorrow so that we know how to proceed. To clarify my position, I hope you understand that I'm not willing to work for the current wages, & since I'm scheduled for tomorrow & Sat[urday] we may have a problem. Please get back to me tomorrow. Thanks"

At the end of plaintiff's shift the next day, the CEO terminated her services. This action ensued.

Defendant moved for summary judgment on each of plaintiff's claims. The trial court granted summary judgment on the Oregon and federal wage and overtime claims, ruling that, in her capacity as a telephone operator, plaintiff was an

independent contractor and, for that reason, was not eligible to assert such claims. On the same ground, the court also granted summary judgment on those portions of plaintiff's retaliation claims that related to the termination of her work as a telephone operator. The portions of the retaliation claims that related to the termination of plaintiff's employment as an administrative assistant were tried to a jury.[2] At the conclusion of plaintiff's case-in-chief, defendant moved for a directed verdict on the ground that plaintiff had not proved the necessary elements of a retaliation claim under either Oregon or federal law. The trial court took the motion under advisement, and it conditionally submitted the retaliation claims to the jury, which found for plaintiff. The court then granted defendant's motion for a directed verdict, and it entered judgment for defendant on plaintiff's retaliation claims. Plaintiff appeals from the trial court's summary judgment and directed verdict rulings that resulted in a final judgment for defendant.

We begin with plaintiff's challenge to the grant of summary judgment. Defendant asserted in its summary judgment motion that, in her capacity as an operator, plaintiff was an independent contractor and, as such, was not entitled to minimum wage or overtime pay. In response, plaintiff asserted that she was an employee, not an independent contractor. She submitted affidavits in which she and another operator, Bergin, averred that defendant had instructed them on "procedures including communicating with customers, answering the telephone, contacting interpreters, connecting and/or dispatching interpreters, and recording interpreter time." Plaintiff and Bergin also stated that defendant had furnished the equipment that they used by installing and paying for telephone lines in their homes and by providing them with lists of interpreters who were available to perform services. Both also noted that defendant set the rate and method of payment for the operators. Plaintiff also submitted the transcript of her own deposition, in which she had testified that defendant controlled the operators' work schedules and retained the power to hire and fire them. Defendant did

---

[2] Defendant conceded that plaintiff was its employee when she acted in her capacity as an administrative assistant.

not dispute that it set the rate and method of plaintiff's compensation or that it provided her with interpreter lists, but it disputed plaintiff's remaining evidence. The trial court held, as a matter of law, that plaintiff worked as an independent contractor in her capacity as an operator.

Plaintiff contends that the evidence that she presented created triable issues of fact concerning her employment status. Defendant responds that the trial court correctly determined, as a matter of law, that plaintiff was an independent contractor. Defendant also argues that, even if there were triable issues concerning plaintiff's status, it compensated plaintiff at a rate in excess of minimum wage. That argument is premised on defendant's assertion that it was not required to pay plaintiff for "on-call" time as an operator that she was able to use effectively for personal purposes. Defendant also asserts that plaintiff received more compensation for overtime work than the premium pay to which she asserted she was entitled.

■ Viewing the evidence and all reasonable inferences it supports in the light most favorable to plaintiff, the nonmoving party, we conclude that there are disputed issues of material fact and that defendant is not entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997).

■ Each of plaintiff's wage and overtime claims, as well as the portions of her retaliation claims that were based on defendant's termination of her services as a telephone operator, depended on whether plaintiff was an employee when she worked in that capacity. An independent contractor is not an "employee" and, therefore, is not entitled to the protection of Oregon or federal minimum wage and overtime laws. ORS 652.310(2); 29 USC § 203 (e), (g) (2000); *see also Herman v. Express Sixty-Minutes Delivery Serv.*, 161 F3d 299, 303 (5th Cir 1998) (under the FLSA, independent contractors are not "employees"). In *Schaff v. Ray's Land & Sea Food Co., Inc.*, 334 Or 94, 101, 45 P3d 936 (2002), the Oregon Supreme Court stated:

"In cases in which the facts or reasonable inferences support a conclusion that there is an employer-employee relationship, this court allows the jury to render a verdict as to

> the individual's employment status—although a conclusion of law—by way of resolving any conflicting facts or inferences on the basis of proper instructions."

Accordingly, we begin by determining whether there exist any issues of material fact regarding plaintiff's employment status.

■■ Oregon courts generally have used a common-law "right to control" test in determining the status of a worker. *State ex rel Roberts v. Acropolis McLoughlin, Inc.*, 149 Or App 220, 223, 942 P2d 829, *modified on recons*, 150 Or App 180, 945 P2d 647 (1997). The principal factors under that test are (1) the right to, or the exercise of, control; (2) the method of payment; (3) the furnishing of equipment; and (4) the right to fire. *Castle Homes, Inc. v. Whaite*, 95 Or App 269, 272, 769 P2d 215 (1989). No one factor is dispositive; they are to be viewed in their totality. *Id.* Under the FLSA, 29 USC sections 201 - 219 (2000), courts apply an "economic realities" test to determine the status of a worker. *United States v. Silk*, 331 US 704, 713, 67 S Ct 1463, 91 L Ed 1757 (1947). The "economic realities" test examines similar factors, namely, whether the alleged employer (1) had the power to hire and fire the worker, (2) supervised and controlled work schedules or conditions of work, (3) determined the rate and method of payment, and (4) maintained employment records. *Gilbreath v. Cutter Biological, Inc.*, 931 F2d 1320, 1324 (9th Cir 1991).

We conclude that, under both tests, plaintiff's evidence created triable issues of material fact. As relevant to the factors common to both tests, plaintiff's evidence showed that defendant had the power to hire and fire telephone operators and that it set the rate and method of their compensation. As regards the other factors under the Oregon "right of control" test, plaintiff's and Bergin's affidavits asserted that defendant exercised control over the manner in which they performed their work and that it selected the pool of interpreters whom they could assign to customers. Both affiants also averred that defendant had furnished telephone lines and interpreter lists to them, which appear to be the sum of physical resources required for their work. That evidence, including inferences that reasonably can be drawn from it,

supports the conclusion that defendant had the right to control the performance of plaintiff's work.

As pertinent to the other factors under the FLSA's "economic realities" test, plaintiff's evidence showed that defendant controlled the operators' work schedules. It also showed that defendant determined their working conditions by limiting other activities that they could perform while working for defendant.[3] That evidence supports the conclusion that plaintiff was defendant's employee for purposes of the FLSA test.

In sum, even though much of the relevant evidence was disputed, plaintiff's evidence, if believed by a trier of fact, would support a conclusion that she was an employee under Oregon and federal law. *See Schaff*, 334 Or at 103 n 5 (the issue of employment status must be submitted to the trier of fact "when the underlying facts are in dispute or more than one reasonable inference relating to the right of control can be drawn from those facts"). It follows that the trial court erred in granting summary judgment for defendant on plaintiff's wage and overtime claims and on the portions of her retaliation claims relating to the termination of her services as a telephone operator, unless, as defendant alternatively asserts, the court was "right for the wrong reason." *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (setting forth principles and requirements for application of "right for the wrong reason" rule).

■ Defendant argues that, even if plaintiff was an employee, it was not required to pay her for "on-call" time. Defendant contends that, under both Oregon and federal law, if an employee is relieved from duty for so long that she can use on-call time effectively for her own purposes, compensation is not payable for that time. Defendant asserts that, when she was on call at home, plaintiff had time in between taking calls to read, watch television, and sleep. Plaintiff replies that defendant offered no evidence that she

---

[3] The parties failed to adduce any evidence as to whether defendant maintained employment records for the night operators. Accordingly, on the present record, that factor is not implicated in our analysis.

was ever completely relieved of duty or, if she was, of the length of any such period.

OAR 839-020-0041(2) (1999) defines when an employee is "off duty":

> "Periods during which an employee is completely relieved from duty and which are long enough to enable him/her to use the time effectively for his/her own purposes are not hours worked. He/she is not completely relieved from duty and cannot use the time effectively for his/her own purposes unless he/she is told in advance that he/she may leave the job and that he/she will not have to commence work until a specified hour has arrived. Whether the time is long enough to enable him/her to use the time effectively for his/her own purposes depends upon all of the facts and circumstances of the case."

In her affidavit, plaintiff averred that she could not leave her house during night and weekend shifts because she was required to answer defendant's telephone line immediately whenever it rang and that technical limitations prevented her from having calls forwarded to other locations or from using a cellular telephone. That evidence, if believed by a trier of fact, would preclude a determination that plaintiff was ever off duty under OAR 839-020-0041(2) (1999).

The analysis under federal law leads to the same conclusion. 29 CFR section 785.17 provides:

> "An employee who is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while 'on call'. An employee who is not required to remain on the employer's premises but is merely required to leave word at his home or with company officials where he may be reached is not working while on call."

As noted, plaintiff's evidence created a triable issue of fact as to whether she could use on-call time effectively for her own purposes. Accordingly, defendant was not entitled, as a matter of law, to judgment on plaintiff's claims on the ground that she was not working while on call.

That conclusion also disposes of defendant's second "right for the wrong reason" argument, namely, that plaintiff was paid more than the premium overtime pay to which she would have been entitled as an employee. Defendant

acknowledges that that argument depends on a determination that plaintiff was off duty at times during her shift. Because triable issues of fact prevent us from making that determination, we cannot affirm on that theory.

In short, summary judgment would not have been appropriate on the alternative grounds asserted by defendant. Accordingly, the trial court erred in granting summary judgment for defendant on plaintiff's minimum wage and overtime claims and on the portions of her retaliation claims that related to the termination of her services as a telephone operator.

We turn to plaintiff's second assignment of error. The jury found that plaintiff's complaints concerning the payment of minimum wages were a substantial factor in defendant's decision to discharge her. However, the trial court concluded that plaintiff did not establish that she had asserted a wage claim under either ORS 652.355 or the FLSA, and, therefore, the court granted defendant's motion for a directed verdict on the remaining portions of her retaliation claims, that is, the portions related to the termination of her employment as an administrative assistant.

■ We review the directed verdict for errors of law, considering the evidence in the light most favorable to plaintiff, the nonmoving party. *Checkley v. Boyd,* 170 Or App 721, 738, 14 P3d 81 (2000), *rev den,* 332 Or 239 (2001). We begin with plaintiff's FLSA claim. Plaintiff asserts that her March 15 e-mail sufficiently communicated the substance of her allegation that defendant was in violation of 29 USC section 206(a) (2000), the FLSA's minimum wage provision, with respect to the compensation of its telephone operators.[4] Defendant's response is twofold. First, it repeats its argument that, in her capacity as a telephone operator, plaintiff was an independent contractor and that the FLSA does not

---

[4] 29 USC section 206(a) provides, in part:

"Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates:

"(1) except as otherwise provided in this section, not less than $4.25 an hour during the period ending on September 30, 1996, not less than $4.75 an hour during the year beginning on October 1, 1996, and not less than $5.15 an hour beginning September 1, 1997[.]"

cover independent contractors. Second, defendant argues that, even if plaintiff was an employee while working as an operator, the FLSA provides a remedy only if the claim is for unpaid wages, that is, compensation for work already performed. According to defendant, the antiretaliation provision of the FLSA, 29 USC section 215(a)(3), does not apply when an employee requests only a prospective pay increase.

Both of defendant's arguments involve the meaning of section 215(a)(3), which provides that it is unlawful for any person

> "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to .this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee[.]"

We summarily dispose of defendant's first argument. 29 USC section 203(e)(1) provides that, with exceptions not relevant here, "the term 'employee' means any individual employed by an employer." As previously noted, an independent contractor is not an employee for purposes of the FLSA. However, that conclusion does not end this matter because, as we have held, the record here—depending on the resolution of disputed issues of fact—may support the conclusion that plaintiff was an employee.

■ We turn to defendant's argument that plaintiff's March 15 e-mail was not a complaint "under or related to" the FLSA because it requested only a prospective pay increase. Defendant's argument poses an issue of statutory construction with respect to section 215(a)(3). When construing a federal statute or regulation, we follow the methodology prescribed by the federal courts. *Hagan v. Gemstate Manufacturing, Inc.*, 328 Or 535, 545, 982 P2d 1108 (1999). That methodology obliges us to examine the statute's text and structure and, if necessary, its legislative history. *Oregon Rev. Dept. v. ACF Industries*, 510 US 332, 339-46, 114 S Ct 843, 127 L Ed 2d 165 (1994).

■ As noted, section 206(a) requires employers to compensate their employees at no less than the minimum wage

rate. An employee's demand for minimum wage rate compensation, whether prospective, retroactive, or both, is, by any reasonable understanding, a complaint "under or related to" section 206(a). Because section 215(a)(3) prohibits an employer from retaliating against an employee who has filed such a complaint, the text of the statute directly undercuts defendant's argument.

Our conclusion is consistent with the decisions of federal courts that have considered the issue. In *Love v. RE/MAX of America, Inc.*, 738 F2d 383, 384 (10th Cir 1984), a female employee was discharged after requesting a raise that would have made her pay equivalent to that of male employees in comparable positions.[5] Although the plaintiff sought only a *prospective* pay increase, the Tenth Circuit held that her discharge was retaliatory. *Id.* at 387. The Eleventh Circuit came to the same conclusion in a case in which a group of female employees asked for a raise after discovering that their male counterparts received better pay for the same work. *EEOC v. White and Son Enterprises*, 881 F2d 1006, 1011 (11th Cir 1989). In neither case did the employees seek compensation for work that they had previously performed.[6]

■ ■ We conclude that plaintiff's request for a pay increase was a complaint "under or related to" section 206(a). We already have determined that there was evidence from which a jury reasonably could find that her complaint was a substantial factor in defendant's decision to discharge her and that defendant therefore violated section 215(a)(3).[7] It

---

[5] Section 206(d) of the FLSA prohibits sex discrimination in setting wages.

[6] The cases that defendant relies on are distinguishable. For example, in *Bacon v. Bonded Oil Co.*, 714 F2d 138 (6th Cir 1983), the plaintiff alleged that his employer's failure to keep accurate time records rendered his discharge discriminatory. The plaintiff did not contend that he was fired *in retaliation for complaining* about record-keeping violations. Defendant also cites *L&F Distributors v. Cruz*, 941 SW2d 274 (Tex Ct App 1996). In that case, the plaintiff was terminated after he complained about working long hours; he did not complain about *not being paid* for overtime work. Because the FLSA does not prohibit employers from requiring employees to work long hours, plaintiff's complaint was not made "under or related to" the FLSA.

[7] Defendant has not separately asserted, either in its motion to the trial court or on appeal, that plaintiff did not make a complaint under section 215(a)(3) because her written request did not expressly refer to minimum wage or overtime violations. Accordingly, we do not consider that issue.

follows that the trial court erred in granting a directed verdict for defendant on plaintiff's retaliation claim under the FLSA.

Finally, we consider plaintiff's retaliation claim under ORS 652.355, which provides, in part:

"(1) No employer shall discharge or in any other manner discriminate against any employee because:

"(a) The employee has made a wage claim or discussed, inquired about or consulted an attorney or agency about a wage claim."

ORS 652.320(9)[8] defines "wage claim" for purposes of ORS 652.355 and provides:

" 'Wage claim' means an employee's claim against an employer for compensation for the employee's own personal services, and includes any wages, compensation, damages or civil penalties provided by law to employees in connection with a claim for unpaid wages."

According to defendant, the term "unpaid wages" in ORS 652.320(9) limits wage claims to those involving previously earned compensation. Defendant asserts that, because plaintiff sought only a prospective pay increase, rather than unpaid wages, she did not make a wage claim under the statute. *See* ORS 652.210(5) (defining "unpaid wages," for purposes of statutory prohibition of discriminatory wage rates based on gender, ORS 652.220, as the "difference between the wages *actually paid* to an employee and the wages required under ORS 652.220, to be paid to such employee") (emphasis added).

Whether plaintiff made a wage claim presents an issue of statutory construction. We examine the text of the statute in its context, and we presume that the legislature intended to give the words it used their ordinary meanings. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). In effect, ORS 652.320(9) defines "wage claim" in two parts. The first part is all encompassing: a wage

---

[8] In 2001, the legislature amended ORS 652.320. Or Laws 2001, ch 7, § 2. Subsection (9) was renumbered as subsection (7) but remains substantively unchanged. Throughout this opinion, we refer to the 1999 statute.

claim is "an employee's claim against an employer for compensation for the employee's own personal services * * *." The second part is a subset of the first: a wage claim *"includes* [an employee's claim against an employer for] wages, compensation, damages or civil penalties provided by law to employees in connection with a claim for unpaid wages."[9] (Emphasis added.) Plaintiff's request did not fall within that subset because it did not pertain to *unpaid* wages. The question remains whether the request nonetheless was a claim for *compensation* for plaintiff's own personal services. We conclude that it was not.

■■ ■■ "Compensation" means "payment for value *received* or service *rendered." Webster's Third New Int'l Dictionary* 463 (unabridged ed 1993) (emphasis added). That definition, which employs a past tense verb, suggests that compensation is payment for work previously performed. That interpretation of the term "compensation" also is consistent with the second clause of the subsection. Under that clause, in addition to "wages" and "compensation," a claimant may recover damages and civil penalties. He or she may do so, however, only "in connection with a claim for *unpaid wages.*"[10] (Emphasis added.) Thus, although the second clause of ORS 652.320(9) permits recovery of amounts that are not themselves compensation for work, to the extent that those amounts are available in the context of a wage claim, the use of the past tense ("unpaid wages") again indicates that the wage claim must pertain to work previously performed. In short, the text of ORS 652.320(9) indicates that the legislature did not intend for the term "wage claim" to encompass a claim based on a request for a pay increase.

■■ Several other provisions in ORS chapter 652 support that construction. *See PGE*, 317 Or at 611 (context includes other related statutes). For example, ORS 652.310(1) defines "employer," for purposes of wage claim enforcement, to include a purchaser of "any employer's business property for

---

[9] "Include" means "to place, list, or rate as a part or component of a whole or of a larger group, class, or aggregate." *Webster's Third New Int'l Dictionary* 1143 (unabridged ed 1993).

[10] The legislature added the latter portion to the statute in 1979. Or Laws 1979, ch 695, § 1.

the continuance of the same business, so far as such employer *has not paid* employees in full." (Emphasis added.) In addition, ORS 652.332, which authorizes the Commissioner of the Bureau of Labor and Industries (BOLI) to enforce wage claims through administrative proceedings, provides that an order determining employer liability shall include "[a] short and concise statement of the basis for the amounts *determined to be owed* to each wage claimant[.]" ORS 652.332(1)(b) (emphasis added). Further, ORS 652.332(6) relates to any wage claim that arose out of work *performed* on certain public works projects, and it authorizes state agencies to pay from retainage the *amount due* on such a claim. By use of the past verb tense, each of those provisions suggests that a wage claim pertains to work already performed and wage amounts already owed or past due.

Several provisions in ORS chapter 653, which cover minimum wage and overtime requirements, also support the same interpretation. The commissioner of BOLI has powers and duties in connection with wage claims under both ORS chapter 652 and chapter 653. ORS 652.330, for example, empowers the commissioner to enforce wage claims on behalf of employees. ORS 653.055(3) describes the commissioner's powers and duties in connection with a *wage claim* based on ORS 653.010 to 653.261 as "the same * * * as the commissioner has under ORS 652.310 to 652.445 *and in addition the commissioner may * * * initiate suits against employers to enjoin future failures to pay required minimum wages or overtime pay * * *.*" (Emphasis added.) Significantly, the commissioner's authority to enjoin *future failures to pay* minimum wage and overtime pay is distinct from the commissioner's authority to assert a wage claim on behalf of an employee under ORS 652.330. That authority is not part of the commissioner's "wage claim" powers; rather, it derives from an additional express statutory grant of authority. *See PGE*, 317 Or at 611 (where the legislature uses the same term in related statutes, court infers that the term has the same meaning); *Kahn v. Pony Express Courier Corp.*, 173 Or App 127, 141, 20 P3d 837, *rev den*, 332 Or 518 (2001).

In addition, although ORS chapter 652 does not contain a pertinent definition of "wages," the term is defined for purposes of ORS chapter 653. ORS 653.010(11) defines wages

as "compensation due." Thus, again, a claim for wages under ORS chapter 653 covers only wages already earned. There is no reason to believe that the legislature had a different meaning in mind when it used the word "wage" in ORS 652.355, or when it used the word "wages" in ORS 652.320(9).

 We conclude that a wage claim for purposes of ORS 652.320(9) and ORS 652.355 must be either a claim for payment for services previously rendered or a claim for wages, compensation, damages, or civil penalties in connection with a claim for unpaid wages—that is, a claim for wages for services previously rendered. Because plaintiff's request for a prospective pay increase was not a wage claim within the meaning of ORS 652.355, the trial court did not err in granting defendant s motion for a directed verdict on her claim based on that statute.

Reversed and remanded with instructions to reinstate jury verdict with respect to plaintiff's FLSA retaliation claim that related to her work as an administrative assistant; reversed and remanded as to plaintiff's Oregon and federal wage and overtime claims and FLSA retaliation claim that related to her work as a telephone operator; otherwise affirmed.