Argued and submitted November 17, 2003, affirmed May 12, petition for review allowed October 14, 2004 (337 Or 547)

# D. Grant WALTER
and Service Employees International Union Local 140,
*Petitioners,*

*v.*

## James SCHERZINGER
and Portland School District No. 1J,
*Respondents.*

### DR-4-02; A118491

89 P3d 1265

James S. Coon argued the cause for petitioners. With him on the briefs was Swanson, Thomas & Coon.

William H. Walters argued the cause for respondents. With him on the brief was Miller Nash LLP.

Before Haselton, Presiding Judge, and Linder and Ortega, Judges.

HASELTON, P. J.

## HASELTON, P. J.

Petitioners, Service Employees International Union Local 140 (Local 140) and its president, D. Grant Walter, seek judicial review of an Employment Relations Board (ERB) declaratory ruling. ERB held that a proposal by respondent Portland Public School District (PPS) to contract out the district's custodial services did not violate the Custodians' Civil Service Law (CCSL), ORS 242.310 to 242.640 and ORS 242.990, and, therefore, was not a prohibited subject for bargaining under the Public Employee Collective Bargaining Act (PECBA). We review ERB's legal conclusions for errors of law, ORS 183.482(8)(a), and affirm.

The relevant facts are uncontested. At all pertinent times, PPS employed approximately 340 custodians, assistant custodians, and custodial helpers represented by Local 140. In early 2002, PPS faced existing and projected budget deficits, which led to what interim superintendent James Scherzinger characterized as a "mission-threatening moment" for the district's schools. In response to that financial situation, on February 5, 2002, Scherzinger sent a letter to Walter notifying him that PPS was "proposing to subcontract out all of the custodial services currently being performed by members of the bargaining unit represented by Local 140."

PPS offered to bargain with petitioners over the proposal. Petitioners objected to the proposal but agreed to bargain with PPS while reserving objections to the plan. On March 18, 2002, the PPS board adopted a budget based on the assumption that PPS would contract out all custodial services and lay off the Local 140-represented employees effective July 1, 2002.

In April 2002, petitioners requested an expedited declaratory ruling from ERB to determine whether the contracting proposal was a prohibited subject of bargaining.[1] *See*

---

[1] In late February 2002, before petitioners filed this declaratory relief proceeding before ERB, they had filed suit for declaratory and injunctive relief in Multnomah County Circuit Court. On May 20, 2002, before ERB rendered its declaratory ruling, the trial court dismissed that case, concluding that ERB had

ORS 183.410; OAR 115-015-0000.[2] Petitioners argued that, because the CCSL provides "the only legal method by which the District may hire custodial workers," the contracting proposal would violate the law. The essence of petitioners' argument, which we amplify below, is that (1) the CCSL describes a comprehensive and fully integrated merit-based system for the appointment and promotion of custodians and assistant custodians providing services to PPS; (2) PPS's private contracting proposal would, effectively, bypass those protections, rendering the entire statutory design a "dead letter"; and (3) the legislature implicitly, but necessarily, precluded such a wholesale circumvention of the CCSL.

PPS responded that the contracting proposal did not violate the CCSL because the CCSL does not prohibit independent contracting arrangements—and, indeed, expressly applies only to "employees" of PPS. *See* ORS 242.320(1), (3). Thus, PPS reasoned that persons performing custodial services pursuant to private independent contracting arrangements would not be "employees" and, consequently, would not be subject to the CCSL.

ERB adopted PPS's position. Applying the template for statutory analysis prescribed in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993), ERB concluded:

"The CCSL is intended to apply to custodians who are employees of the District. Nothing in the law states that the District cannot subcontract custodial services; rather, the CCSL applies if the District decides to hire custodians as employees of the District. Thus, there is no conflict between the CCSL and the District's proposal. The District's proposal does not require it to violate the CCSL, because, as a

exclusive jurisdiction to resolve the issue. The trial court also issued a "provisional ruling" on the merits, holding that the CCSL "does not prohibit the contracting of custodial services to outside entities." The trial court's disposition in that case is being challenged in a separate appeal. *See Walter v. Scherzinger (A118490)*, 193 Or App 371, 89 P3d 1273 (2004).

[2] ORS 183.410 provides:

"On petition of any interested person, any agency may in its discretion issue a declaratory ruling with respect to the applicability to any person, property, or state of facts of any rule or statute enforceable by it."

OAR 115-015-0000 repeats the statutory language.

threshold matter, for CCSL to apply, the custodians must be District employees.

"Petitioners emphasize various provisions of the CCSL that state the District 'shall' do certain things in connection with the employment of custodians, such as, certain required actions and procedures the civil service board must follow filling vacancies and establishing classifications. (Petition for Declaratory Ruling pp. 3-7.) Petitioners argue that these statutory provisions would be rendered meaningless if the District contracts out custodial services. It is true that if the District employs no custodians, these provisions cease to have effect. Still, the CCSL clearly was intended to cover only those custodians in the District's employ. There is simply nothing in the law that extends its reach to independent contractors of the District, or that prohibits the District from subcontracting custodial services. The mandatory language of the CCSL, relied upon by Petitioners, takes effect only if custodians are employees of the District.

"* * * Petitioner[s] contend[ ] that if the legislature had intended the CCSL to be optional, it would have said so, as it did in these other laws. Petitioners' argument, however, ignores the definitions of the CCSL that clearly limit its applicability to employees of the District. As stated above, while the language of the CCSL contains many 'shalls,' these provisions apply only to custodians who are District employees.

"* * * * *

"Even if it were necessary to examine legislative history, the fact remains that nothing in the statute, or its legislative history, extends the CCSL's reach to prohibit subcontracting. By the plain terms of the statute, its coverage is limited to employees of the District. If the legislature had intended to ban contracting with private firms for custodial services, or if it had intended to extend the coverage of the CCSL to private contractors of the District, it would have said so. It did not. We will not read a prohibition into the CCSL that simply is not there."

On judicial review, the parties reiterate their arguments to ERB. As the parties acknowledge, the resolution of this dispute turns on the proper construction of the CCSL under the principles prescribed in *PGE*. Accordingly, as a

prelude to that inquiry, it is useful to describe the CCSL's general structure and content.

The CCSL was enacted in 1937. Or Laws 1937, ch 355, §§ 1-18. At that time, the statute applied only to school districts with a population of 100,000 or more—*i.e.*, Portland only.[3] Section 2 of the 1937 act generally described the statute's scope:

> "In all school districts of this state in which there is a population of 100,000 or more persons, according to the last federal census, there hereby is created a civil service board with jurisdiction over the appointment, employment, classification and discharge of custodians and assistant custodians in the employ of such school district. Custodians hereby are defined as employes of such school district, who shall have supervision of property, keeping the same in a sanitary condition and tending to the cleaning and operation of heating plants and other necessary work in the way of care and labor to keep the physical plants of the school board in maintenance and operation; and assistant custodians hereby are defined as those employes who work under such custodians' supervision. Any assistant custodian receiving less than $60 per month as a wage shall not be deemed to come within the provisions of this act."

Other provisions of the 1937 act required the creation of a three-member custodian civil service board with a secretary to record all proceedings and keep a record of all examinations administered by the board. *Id.* at §§ 3, 4. In general, the board was charged with responsibility for classifying the work and compensation of custodians and assistant custodians, administering merit-based competitive examinations for appointments, ranking candidates according to their performance on the competitive exams, and, in the event of vacancies, certifying candidates to the "appointing authority" (the school board or its designee). *Id.* at §§ 6, 7, 9, 10, 11. In sum, the CCSL, as originally enacted, was a classic merit-based civil service scheme. *See, e.g., id.* at § 6 (in administering exam, "[n]othing with relation to an applicant's political or religious opinion or affiliation shall be asked or given").[4]

---

[3] The statute was later amended to apply only to districts with a population of 300,000 or more, Or Laws 1975, ch 770, § 42—again, Portland only.

[4] Other noteworthy provisions of the 1937 act included section 5 ("grandfathering" clause: "All persons employed as custodians and assistant custodians [on the

Although the CCSL has been amended several times in the last 67 years, it has retained its essential features. *See* ORS 242.310 - 242.640. The substance of the original section 2 is now expressed, with marginal variation, in two provisions, ORS 242.330(1) and ORS 242.320. ORS 242.330(1) provides:

> "In all school districts having a population of 300,000 or more persons according to the last federal census, there is created a civil service board with jurisdiction over the appointment, employment, classification and discharge of custodians and assistant custodians in the employ of the school district."

ORS 242.320, in turn, defines "custodian" and "assistant custodian" for purposes of the CCSL:

> "As used in ORS 242.310 to 242.640, unless the context requires otherwise:

> "(1) 'Assistant custodian' means *any employee* who works under the supervision of a *custodian* except those who:

> "(a) Work less than eight hours per day; or

> "(b) Work less than 12 months per year; or

> "(c) Receive an hourly rate of pay.

> "* * * * *

> "(3) 'Custodian' means *an employee* of the school district who has supervision of property, keeping it in sanitary condition and tending to the cleaning and operation of heating plants and other necessary work by way of care and labor to keep the physical plants of the school board in maintenance and operation."[5]

statute's effective date] shall become permanent employes without any examination"); section 8 (prescribing minimum qualifications for examination and appointment including, "[n]o person habitually using intoxicating beverages to excess or who has been an inmate of an insane asylum or who has been convicted of a crime involving moral turpitude shall be eligible for appointment"); section 11 (at end of six-month probationary period, appointment was deemed permanent); and section 12 (person who attained permanent appointment could not be discharged except "for cause" and with entitlement to prescribed process).

[5] The exceptions to the definitions of "assistant custodian" described in ORS 242.320(1)(a), (b), and (c) were enacted in 1969, Or Laws 1969, ch 262, § 1, and replaced the exception to section 2 of the 1937 act for assistant custodians "receiving less than $60 per month as a wage."

(Emphasis added.)

The CCSL continues to require PPS to appoint and maintain a three-member custodian civil service board, ORS 242.320 to 242.360, with the board, in turn, being required to appoint a paid secretary to maintain a record of its proceedings, ORS 242.370; to publish an annual report, ORS 242.400; to maintain "a roster for all employees" under the CCSL, *id.*; and to make examination papers and results available to the public, ORS 242.410. In addition, the board is required to classify "all positions in the service of the school board * * * including those under the supervision of a custodian except those described in ORS 242.320(1)(a), (b) or (c)," ORS 242.510; to administer, "from time to time," competitive merit-based examinations for beginning positions, ORS 242.530 and ORS 242.540; and to maintain a rank-ordered register of applicants based on their exam performance, ORS 242.560. ORS 242.520(1), the present analog to section 6 of the 1937 act, provides:

> "No appointment or promotion to any position shall be made except as provided in the Custodians' Civil Service Law. All appointments to beginning employment positions in the classified civil service shall be made according to fitness, to be ascertained by open competitive examinations. All promotions in the classified civil service shall be made according to merit in service, fidelity in service and seniority in service."

Each of the statutory directives just described is explicitly mandatory. *See, e.g.*, ORS 242.400 ("The board shall * * * make a report[.]"); ORS 242.530 ("The board shall, from time to time, hold public competitive examinations[.]"); ORS 242.560 ("The board shall prepare and keep a register[.]").

Other features of the present CCSL continue to conform, generally, to the original 1937 model. For example, although the probationary period has been extended from six months to one year, *compare* Or Laws 1937, ch 355, § 11, *with* ORS 242.590, upon the expiration of that probationary period, "the appointment is deemed permanent." *Id.* Further, albeit with certain variations, the present CCSL, like section 8 of the 1937 act, continues to prescribe minimum requirements for appointment. ORS 242.550 provides:

"The civil service board may require an applicant for a custodial position to furnish evidence satisfactory to the board of good character, mental and physical health, and such other evidence as it may deem necessary to establish the applicant's fitness, including any information concerning a criminal conviction for a crime involving the possession, use, sale or distribution of a controlled substance, sexual misconduct listed in ORS 342.143(3), theft or a crime of violence. The board shall not approve the employment of any applicant unless the board is satisfied that the applicant poses no danger to school children."

Finally, under ORS 242.620, as under section 12 of the 1937 act, "[n]o employee in the classified civil service who has been permanently appointed shall be dismissed except for cause" and with an entitlement to specified process.

With that broad contextual backdrop, we turn to the parties' arguments under *PGE*. At the outset, we note, as PPS emphasizes, that nothing in the CCSL explicitly precludes the district from using independent contractors to perform custodial services. Still, as petitioners counter, that is hardly conclusive. Nothing in the CCSL expressly refers to, much less explicitly approves or precludes, independent contracting arrangements. Ultimately, the inquiry must be whether the CCSL implicitly precludes such arrangements. If not, PPS's proposal does not violate PECBA.

In that regard, the parties' arguments at *PGE*'s first, "text-in-context" level are anchored in dramatically different—indeed, irreconcilable—premises. PPS's premise, which ERB adopted, is stark and simple: The CCSL, by its terms—and, particularly, expressly in its definitions of "assistant custodian" and "custodian," ORS 242.320(1) and (3)—applies only to "employees" of PPS; because independent contractors are not "employees," the CCSL is inapposite. As additional contextual support for that premise, PPS refers to several other provisions of the CCSL that contain variations of "employ," "employee," and "employment." *See* ORS 242.330(1) (custodial civil service board has jurisdiction over, *inter alia*, the "*employment* * * * of custodians and assistant custodians in the *employ* of the school district*" (emphasis added));[6] ORS 242.400 (board shall "provide a roster for all

[6] Arguably, if PPS's construction of ORS 242.320(1) and (3) is correct, the reference to "in the employ of the school district" in ORS 242.330(1) is redundant

*employees*" under the CCSL (emphasis added)); ORS 242.520(1) ("[a]ll appointments to beginning *employment* positions" shall be based on competitive examinations (emphasis added)); ORS 242.550 (board shall not approve "the *employment* of any applicant" unless satisfied that he or she poses no danger to school children (emphasis added)).[7]

Petitioners acknowledge the CCSL's pervasive references to "employees" and do not contend that persons providing custodial services under PPS's proposal would be "employees" of PPS within the meaning of the CCSL.[8] They contend, however, that PPS misconstrues the significance of the statute's references to "employees" and the like:

"A fair reading of the statutory definition suggests that its intent was to describe the kind of work custodians do. The phrase 'employee of the school district' is at least as likely to suggest an assumption by the legislature that custodians would be district employees as it is to suggest that the legislature meant to allow the district to choose whether to have custodial employees subject to the statute or subcontracted custodial workers not subject to any of its

---

because, by definition, all "custodians" and "assistant custodians" for purposes of the CCSL are "employees" of PPS.

[7] *See also* ORS 242.520(2) (no person shall be "appointed or *employed*" under title not appropriate to the duty to be performed (emphasis added)); ORS 242.530 (referring to "beginning *employment* positions of the classified civil service" (emphasis added)); ORS 242.560(1) (board to maintain rank-ordered register of candidates "for beginning *employment* positions" (emphasis added)); ORS 242.570(4) (providing for interviews of candidates "for beginning *employment*" (emphasis added)); ORS 242.590(2) ("grandfathering" provision: persons employed on effective date of CCSL are deemed to be "permanent *employees*" without examination (emphasis added)); ORS 242.610 (if "employee" is suspended for, *inter alia*, lack of available work, "the *employee*" shall "have the first preference in the filling of any vacancy" (emphasis added)); ORS 242.620 ("[n]o *employee* in the classified civil service who has been permanently appointed, shall be dismissed except for cause" (emphasis added)); ORS 242.630(2) (providing for reinstatement of wrongfully discharged "employee"); ORS 242.635 (limiting reapplication by duly dismissed "employee").

[8] Although the parties do not directly address the point, both apparently accept the unremarkable proposition that independent contractors are not "employees." *See generally Knapp v. Standard Oil Co.*, 156 Or 564, 574-75, 68 P2d 1052 (1937) (in assessing vicarious liability, "right to control" test determines "whether a party who is engaged in the performance of work for another is a servant or an independent contractor"); *Perri v. Certified Languages International, LLC*, 187 Or App 76, 81-82, 66 P3d 531 (2003) (applying both state "right to control" test and federal "economic realities" test and noting that "[a]n independent contractor is not an 'employee' " for purposes of state and federal minimum wage and overtime laws).

provisions. The balance of the text and context of the statute make it clear that the former, not the latter, was intended."

Thus, in petitioners' view, the statutory references to "employee" merely reflect and express the legislature's "assumption" that all persons providing custodial services to PPS, except those exempted by statute, *see* ORS 242.320(1)(a) to (c), would, in fact, be employed by PPS. At the very least, petitioners reason, the statutory text is ambiguous—and that ambiguity is conclusively resolved by reference to context.

That, in turn, leads to petitioners' central premise: PPS's proposal would render the CCSL a "dead letter," and the legislature could not have intended to permit such a result. Petitioners' "dead letter" premise is pitched at two levels, one concrete and particular, the other more general. At the concrete level, petitioners emphasize that many provisions of the CCSL summarized above are mandatory—*viz.*, there "shall" be a custodian civil service board and a paid secretary, and the board "shall" issue annual reports, administer periodic competitive exams, and maintain rank-ordered rosters and registers. *See* 193 Or App at 362 (summarizing statutes). If, however, all of PPS's custodial services are contracted out, those mandatory provisions will be rendered meaningless. That result, petitioners assert, would offend the first-level maxim of statutory construction that, " 'where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all.' " *PGE*, 317 Or at 611 (quoting ORS 174.010).

Beyond that, and more broadly, petitioners contend that the CCSL is a comprehensive and integrated statutory scheme designed to govern the hiring of those providing custodial services to PPS and to afford protections to those so retained. *See, e.g.*, ORS 242.520 ("All appointments to beginning employment positions * * * shall be made according to fitness, to be ascertained by open competitive examinations."); ORS 242.620 ("No employee in the classified civil service who has been permanently appointed, shall be dismissed except for cause[.]"). Thus, as a contextual matter, petitioners assert that the legislature could not have

intended to permit those protections to be circumvented by the gambit of private contracting arrangements.

PPS remonstrates that petitioners' "dead letter" premise begs the question:

> "But the creation of a statutory scheme does not mean that the subject matter of the scheme must exist forever. Many statutes create complex regulatory schemes. For example, wage and hour laws regulate employment, including hourly rates of pay, overtime rates, rest periods, and employment of children. ORS chapters 652, 653. But no one would argue that the existence of this comprehensive and detailed regulatory scheme requires that companies must employ workers, that companies must have employees work overtime so that overtime pay can be calculated, or that children must work so that child labor laws have someone to regulate. And further examples could be multiplied.

> "Furthermore, just because the rather extreme financial straits that the District has been faced with led the District reluctantly to elect to contract out its custodial work for cost-saving reasons, this does not mean that in the future the District may not decide to hire or recall custodial employees."

Ultimately, for reasons that we will explain, neither of the parties' contending premises is conclusive. Nevertheless, we conclude that the CCSL does not preempt or preclude PPS from contracting with private providers of custodial services.

We begin with the CCSL's use of "employee" and variations of that term, particularly in the definitions of "assistant custodian" and "custodian." ORS 242.320(1), (3). The significance of that terminology can be properly understood only by reference to the broader context of school districts' hiring and contracting authority at the time that the CCSL was enacted. Two aspects of that context are most significant. First, at that time, the statute that prescribed the duties of "first-class" school districts (*viz.*, districts with a population of 1,000 or more)[9] provided, in part:

---

[9] Oregon Code, title XXXV, ch 9, § 35-902 (1935 supp).

"The duties and powers of the district school boards in districts of the first class, to be exercised in their discretion, shall be:

"* * * * *

"(2)   To employ principals, teachers, supervisors, athletic coaches, supervisors of summer playground and recreation activities, office assistants, truant officers, attendance supervisors, health attendants, architects, *janitors, carpenters and similar employees,* define their duties, designate their superiors and fix their compensation."

Oregon Code, title XXXV, ch 13, § 35-1315a (1935 supp) (emphasis added).[10] Second, as of 1937, the authority of school districts to enter into contracts with outside providers of services does not appear to have contemplated contracts for the provision of custodial services. *See, e.g.,* Oregon Code, title XXXV, ch 13, § 35-1331 (1930).[11]

---

[10] That language was still in effect in 1937 and remained unchanged as of 1949. *See* Or Laws 1949, ch 37, § 1 (showing no alteration of pertinent language). Thereafter, the statute was amended and renumbered several times, with the final step in that evolution occurring in 1993. *See* Or Laws 1993, ch 45, § 56. As so amended, the statute now provides:

"(1)  A district school board may:

"* * * * *

"(b)  Employ personnel, including teachers and administrators, necessary to carry out the duties and powers of the board and fix the duties, terms and conditions of employment and the compensation."

[11] That statute provided:

"In all [first-class] districts, when in the opinion of the board the cost of any lot of furniture, stationery, apparatus, fuel, buildings, or improvements or repairs to the same, will equal or exceed the sum of $500, it shall be the duty of said board to give due notice, by publication in at least one daily newspaper published within said corporate limits, of their intention to receive bids for such lot of furniture, stationery, etc., and they shall determine the specifications for such bids and appoint the time and place for opening of all bids, which shall be public; and it shall be unlawful for any member of the school board to bid or to be an interested party in any bid before such board."

*See* OCLA § 111-1224 (showing no change in statutory language). After various changes in numbering and substantive amendments, that statute was ultimately repealed in its entirety as part of a general overhaul of the public contracting laws in 1975. *See* Or Laws 1975, ch 771, § 33.

Two statutes pertaining to school districts' authority to procure necessary services were enacted long after 1937. First, in 1975, the legislature enacted the antecedents of many of the public contracting provisions now codified at ORS 279.005 to 279.111. *See* Or Laws 1975, ch 771. Those provisions apply to "any political subdivision [of the State of Oregon] authorized by law to enter into public contracts," ORS 279.011(8), and govern, *inter alia,* contracts for "services other than

That context indicates that, as of 1937, all persons providing custodial services for school districts were "employees." Independent contracting was not an option. Thus, petitioners are correct to the extent that they posit that the CCSL's references to "employee" reflect "an *assumption* by the legislature that custodians would be district employees." (Emphasis added.)

But that "assumption," grounded in then-existing circumstances, does not equate with a *requirement* that persons performing custodial services must be hired as employees—*i.e.*, that only employees could perform custodial work. Rather, in context, the legislature's use of "employee" was descriptive, based on contemporary reality, and not prescriptive.

Conversely, petitioners' "dead letter" premise is deeply flawed. The first and most glaring problem with that premise is that the CCSL, by its own terms, can effectively be rendered a "dead letter" even without resort to private contracting arrangements. In particular, the statutory exceptions to the definition of "assistant custodian" are so broad that PPS, if it so chose, could hire a single "custodian" for the entire district and avoid the application of the CCSL with respect to all other persons providing custodial services. As noted, ORS 242.320 defines "assistant custodian" as follows:

"(1) 'Assistant custodian' means any employee who works under the supervision of a custodian except those who:

"(a) Work less than eight hours per day; or

---

agreements which are for personal service." ORS 279.011(7). School districts are "political subdivision[s] of the state." *Jacobberger v. School District. No. 1.*, 122 Or 124, 129, 256 P 652 (1927).

Second, in 1965, Or Laws 1965, ch 100, § 143, the legislature amended ORS 332.155, adding the language currently found in subsection (7). That statute provides, in part:

"A district school board:

"* * * * *

"(7) Shall furnish the schools with supplies, equipment, apparatus and services essential to meeting the requirements of a standard school and may furnish such other supplies, equipment, apparatus and services as the board considers advisable."

"(b)   Work less than 12 months per year; or

"(c)   Receive an hourly rate of pay."

Thus, the CCSL, by its terms, does not apply to: (1) persons providing custodial services who are not working under the supervision of a "custodian" and who are not themselves "custodians" (*viz.*, they do not have "*supervision* of property," ORS 242.320(3) (emphasis added)); (2) persons who work under the supervision of a custodian but who work less than eight hours a day; (3) persons who work under the supervision of a custodian but who work less than 12 months a year; or (4) persons who work under the supervision of a custodian but who receive an hourly rate of pay. The potential for circumvention of the CCSL, even without private contracting, is manifest.[12]

Our point is not to invite subterfuge. Rather, we highlight the CCSL's exceptions to place petitioners' "dead letter" arguments in perspective. The consequences of independent contracting that petitioners decry, including the abrogation of merit-based selection, are not dissimilar from those that the statute's exceptions plainly permit. When viewed in context, the ostensible incongruities that underlie petitioners' "dead letter" premise are not so incongruous.

The same is true with respect to petitioners' related argument that, if private contracting arrangements are permissible, the custodial civil service board will continue to exist but without any purpose—a statutory artifact charged with issuing meaningless annual reports and maintaining rosters of applicants for positions that will never again exist. We acknowledge the apparent anomaly. However, as PPS notes, the existence of a regulatory scheme does not, by itself, mandate the continuation of the regulated activity.[13] The

---

[12] To some extent, the same potential existed under the 1937 act. As noted, the original definition of "assistant custodian" in section 2 of that act excepted anyone "receiving less than $60 per month." *See* 193 Or App at 360. Thus, persons falling within that exception could be hired without reference to competitive merit and terminated at will.

[13] For example, and with respect, the legislature's creation of various agricultural boards and commissions, *see, e.g.*, ORS 576.062, does not implicitly require the continued production of those crops.

existence of a statutory scheme regulating the hiring of custodians and assistant custodians as employees of a school district does not, without more, preclude the district from procuring such services through other means.[14] Indeed, as noted, *see* 193 Or App at 367-68 n 11, other later enacted statutes authorize school districts to procure essential services through public contracting processes. *See, e.g.*, ORS 279.005 to 279.111, ORS 332.155(7).

We thus conclude that the CCSL does not preclude PPS's private contracting proposal. Nothing in the CCSL's text or pertinent context requires PPS to hire persons providing custodial services as employees. Similarly, and concomitantly, nothing in the CCSL limits PPS's ability to procure custodial services through contracts comporting with the public contracting laws. Rather, the CCSL merely provides that, in those circumstances in which PPS does, in fact, employ persons as probationary or permanent custodians or assistant custodians, the appointment, retention, promotion, and discharge of those employees must comply with the requirements of the CCSL. Nothing more.[15] Accordingly, PPS's proposal does not violate PECBA.

Affirmed.

---

[14] Presumably, if, because of a change in PPS's practices, the CCSL is, in fact, rendered irrelevant, the legislature can respond as it sees fit.

[15] We note, parenthetically, that resort to legislative history is unenlightening. No legislative history exists for the 1937 act. Further, although the CCSL has been amended several times, none of those amendments has fundamentally altered the operative statutory language.