Argued and submitted March 10, decision of Court of Appeals reversed; declaratory ruling of Employment Relations Board reversed October 13, 2005

D. Grant WALTER
and Service Employees International Union Local 140,
*Petitioners on Review,*

*v.*

James SCHERZINGER
and Portland School District No. 1J,
*Respondents on Review.*

(ERB DR-4-02; CA A118491; SC S51669)

121 P3d 644

James S. Coon, of Swanson, Thomas & Coon, Portland, argued the cause and filed the briefs for petitioners on review.

William H. Walters, of Miller Nash LLP, Portland, argued the cause and filed the briefs for respondents on review.

DE MUNIZ, J.

Balmer, J., dissented and filed an opinion, in which Carson, C. J., and Gillette, J., joined.

## DE MUNIZ, J.

The issue in this case is whether, in accordance with the text of the Custodians' Civil Service Law (CCSL), ORS 242.310 to 242.640 and ORS 242.990,[1] the Portland Public School District (the district) must employ custodians and whether the district must do so consistently with the merit system set out in that law. The Service Employees International Union Local 140 (Local 140) and its president, D. Grant Walker (collectively "petitioners"), sought a declaratory ruling from the Employment Relations Board (ERB) that the district's proposal to terminate its existing custodial workforce and contract for custodial services violated the CCSL and, therefore, was a prohibited subject of bargaining. The ERB concluded that the CCSL did not prohibit the district from contracting for its custodial services. Local 140 appealed that decision, and the Court of Appeals concluded, like the ERB, that the district could contract for custodial services notwithstanding the provisions of the CCSL. *Walter v. Scherzinger*, 193 Or App 355, 89 P3d 1265 (2004). We allowed Local 140's petition for review, and, for the following reasons, we reverse the decision of the Court of Appeals and the declaratory ruling of the ERB.

We take the facts and positions of the parties from the Court of Appeals decision:

"At all pertinent times, [the district] employed approximately 340 custodians, assistant custodians, and custodial helpers represented by Local 140. In early 2002, [the district] faced existing and projected budget deficits, which led to what interim superintendent James Scherzinger characterized as a 'mission-threatening moment' for the district's schools. In response to that financial situation, on February 5, 2002, Scherzinger sent a letter to Walter notifying him that [the district] was 'proposing to subcontract out all of the custodial services currently being performed by members of the bargaining unit represented by Local 140.'

"[The district] offered to bargain with petitioners over the proposal. Petitioners objected to the proposal but

---

[1] Below, we set out the relevant text of the law and discuss it in greater detail.

agreed to bargain with [the district] while reserving objections to the plan. On March 18, 2002, the [district] board adopted a budget based on the assumption that [the district] would contract out all custodial services and lay off the Local 140-represented employees effective July 1, 2002.

"In April 2002, petitioners requested an expedited declaratory ruling from [the] ERB to determine whether the contracting proposal was a prohibited subject of bargaining. * * * Petitioners argued that, because the CCSL provides [that] 'the only legal method by which the District may hire custodial workers,' the contracting proposal would violate the law. The essence of petitioners' argument * * * is that (1) the CCSL describes a comprehensive and fully integrated merit-based system for the appointment and promotion of custodians and assistant custodians providing services to [the district]; (2) [the district]'s private contracting proposal would, effectively, bypass those protections, rendering the entire statutory design a 'dead letter'; and (3) the legislature implicitly, but necessarily, precluded such a wholesale circumvention of the CCSL.

"[The district] responded that the contracting proposal did not violate the CCSL because the CCSL does not prohibit independent contracting arrangements—and, indeed, expressly applies only to 'employees' of [the district]. * * * Thus, [the district] reasoned that persons performing custodial services pursuant to private independent contracting arrangements would not be 'employees' and, consequently, would not be subject to the CCSL.

"[The] ERB adopted [the district]'s position. Applying the template for statutory analysis prescribed in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993), [the] ERB concluded:

" 'The CCSL is intended to apply to custodians who are employees of the District. Nothing in the law states that the District cannot subcontract custodial services; rather, the CCSL applies if the District decides to hire custodians as employees of the District. Thus, there is no conflict between the CCSL and the District's proposal. The District's proposal does not require it to violate the CCSL, because, as a threshold matter, for CCSL to apply, the custodians must be District employees.

" 'Petitioners emphasize various provisions of the CCSL that state [that] the District 'shall' do certain

things in connection with the employment of custodians, such as, certain required actions and procedures [that] the civil service board must follow filling vacancies and establishing classifications. * * * Petitioners argue that these statutory provisions would be rendered meaningless if the District contracts out custodial services. It is true that[,] if the District employs no custodians, these provisions cease to have effect. Still, the CCSL clearly was intended to cover only those custodians in the District's employ. There is simply nothing in the law that extends its reach to independent contractors of the District, or that prohibits the District from subcontracting custodial services. The mandatory language of the CCSL, relied upon by Petitioners, takes effect only if custodians are employees of the District.

" "* * * Petitioner[s] contend[ ] that[,] if the legislature had intended the CCSL to be optional, it would have said so, as it did in these other laws. Petitioners' argument, however, ignores the definitions of the CCSL that clearly limit its applicability to employees of the District. As stated above, while the language of the CCSL contains many 'shalls,' these provisions apply only to custodians who are District employees.

" "* * * * *

" 'Even if it were necessary to examine legislative history, the fact remains that nothing in the statute, or its legislative history, extends the CCSL's reach to prohibit subcontracting. By the plain terms of the statute, its coverage is limited to employees of the District. If the legislature had intended to ban contracting with private firms for custodial services, or if it had intended to extend the coverage of the CCSL to private contractors of the District, it would have said so. It did not. We will not read a prohibition into the CCSL that simply is not there.'

"On judicial review, the parties reiterate their arguments to [the] ERB."

*Walter*, 193 Or App at 357-59 (footnotes and citations omitted).

Like ERB, the Court of Appeals concluded that the CCSL does not prohibit the district's proposal to terminate its

existing custodial workforce and contract for custodial services:

> "[T]he CCSL does not preclude [the district]'s private contracting proposal. Nothing in the CCSL's text or pertinent context requires [the district] to hire persons providing custodial services as employees. Similarly, and concomitantly, nothing in the CCSL limits [the district]'s ability to procure custodial services through contracts comporting with the public contracting laws. Rather, the CCSL merely provides that, in those circumstances in which [the district] does, in fact, employ persons as probationary or permanent custodians or assistant custodians, the appointment, retention, promotion, and discharge of those employees must comply with the requirements of the CCSL. Nothing more."

*Id.* at 370.

In this court, petitioners reassert that the text of the CCSL requires the district to employ custodians and that it must do so consistently with the merit system described in the CCSL. Petitioners argue that, in enacting the CCSL the legislature intended to ensure the protection of children. According to petitioners, that intent is reflected in the text of ORS 242.550, which provides:

> "The civil service board may require an applicant for a custodial position to furnish evidence satisfactory to the board of good character, mental and physical health, and such other evidence as it may deem necessary to establish the applicant's fitness, including any information concerning a criminal conviction for a crime involving the possession, use, sale or distribution of a controlled substance, sexual misconduct listed in ORS 342.143(3), theft or a crime of violence. *The board shall not approve the employment of any applicant unless the board is satisfied that the applicant poses no danger to school children.*"

(Emphasis added.) Petitioners further argue that it is unlikely that the legislature would have mandated the existence of a civil service board and a secretary for the board, and, *inter alia*, that vacancies be filled within 10 days unless it intended "the civil service system to continue to apply indefinitely, as long as the Portland District had need of custodial services."

In response, the district argues that the CCSL, like many similar laws enacted in other states, was a response to custodial, and other jobs, being "subject to nepotism and to political and religious cronyism." Additionally, and consistently with the decision of the Court of Appeals, the district argues that the CCSL, by its terms, applies only if the district *decides* to employ custodians. Therefore, the district argues, the CCSL does not preclude it from contracting with private parties for custodial services. In addition, the district argues that a 1965 amendment to ORS 332.155, adding what is now subsection (7), indisputably provides the district with the authority to contract for custodial services. That provision provides:

"A district school board:

"* * * * *

"(7) Shall furnish the schools with supplies, equipment, apparatus and services essential to meeting the requirements of a standard school and may furnish such other supplies, equipment, apparatus and services as the board considers advisable."[2]

As the parties' arguments make clear, this case presents a question of statutory interpretation. We therefore apply the statutory interpretation methodology set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), to determine the legislature's intent when it enacted the CCSL.

Pursuant to *PGE*, we turn first to the relevant text and context of the CCSL. 317 Or at 610. ORS 242.320[3]

---

[2] Chapter 279 of the Oregon Revised Statutes sets out provisions authorizing certain public entities to enter into contracts for services. The district relies on that authority and the text of ORS 332.155(7) to support its position.

[3] ORS 242.320 provides:

"As used in ORS 242.310 to 242.640, unless the context requires otherwise:

"(1) 'Assistant custodian' means any employee who works under the supervision of a custodian except those who:

"(a) Work less than eight hours per day; or

"(b) Work less than 12 months per year; or

"(c) Receive an hourly rate of pay.

"(2) 'Board' means a civil service board created pursuant to ORS 242.330.

"(3) 'Custodian' means an employee of the school district who has supervision of property, keeping it in sanitary condition and tending to the cleaning

defines the terms "assistant custodian" and "custodian." With certain exceptions not relevant here, ORS 242.320(1) defines "assistant custodian" as "any employee who works under the supervision of a custodian[.]" ORS 242.320(2) similarly defines "custodian" as "an employee of the school district" who has certain duties with respect to the supervision of school property. ORS 242.330(1) further provides:

> "In all school districts having a population of 300,000 or more persons according to the last federal census, there is created a civil service board with jurisdiction over the appointment, employment, classification and discharge of custodians and assistant custodians in the employ of the school district."

The district in question is a school district with a population of 300,000 or more persons.[4] Notably, ORS 242.520(1) provides that "[n]o appointment or promotion to any position shall be made except as provided in the [CCSL]." The CCSL continues on to require "public competitive examinations to ascertain the fitness of applicants for beginning employment positions[,]" ORS 242.530, specifies the content of those examinations, ORS 242.540, requires the civil service board to scrutinize the character of all applicants to ensure that none "poses a danger to school children[,]" ORS 242.550, and sets out other requirements pertaining to the board's management and termination of employees, ORS 242.560 to 242.640.

Most relevant to our analysis is the text of ORS 242.520(1). Petitioners argue that ORS 242.520(1) requires that the district observe the merit system set out in the CCSL

and operation of heating plants and other necessary work by way of care and labor to keep the physical plants of the school board in maintenance and operation."

[4] The provisions that follow ORS 242.330(1) set out, in detail, the requisite number of members (termed "commissioners") the civil service board, ORS 242.330(2), requirements for eligibility to be a commissioner, ORS 242.340, commissioners' terms in office and compensation, ORS 242.350, provisions for the removal of commissioners and the mandatory filling of a vacancy within 10 days of such vacancy, ORS 242.360, the mandatory appointment of a secretary to keep a record of proceedings, ORS 242.370, and the requirement that the school board provide the civil service board with an appropriate work space, ORS 242.380. The CCSL also authorizes the civil service board to "make appropriate rules and regulations to carry out the provisions of the Custodians' Civil Service Law." ORS 242.390.

when acquiring its custodial services. The effect of that provision turns on the meaning of the terms "appointment" and "position." Because the CCSL does not define those terms, we turn to a dictionary to ascertain the "plain, natural, and ordinary meaning" of those terms. *PGE*, 317 Or at 611. The relevant dictionary definition of "appointment" is the "designation of a person to hold a nonelective office or perform a function." *Webster's Third New Int'l Dictionary* 105 (unabridged ed 2002). Additionally, the relevant definition of "position" is "the group of tasks and responsibilities making up the duties of an employee[.]" *Id.* at 1769. ORS 242.520(1), therefore, properly can be understood as prohibiting the district from designating any person[5] to hold an office or perform a function that involves the tasks and responsibilities of a custodial employee without doing so pursuant to the CCSL.[6]

The district asserts, however that the text of the CCSL applies only if the district chooses to employ custodial workers. We now address that contention. We begin with a brief discussion of the development of the statutes governing the duties of school districts as context for our understanding of the legislature's intent when it enacted the CCSL in 1937.

In 1901, as part of a complete revision of the laws governing the Oregon public school system,[7] the legislature enacted statutes addressing the organization of school districts and the duties of school boards. The revision required that all school districts be classified as "first class," "second class," or "third class" based on "the number of children of

---

[5] As used in Oregon law, " '[p]erson' includes individuals, corporations, associations, firms, partnerships, limited liability companies and joint stock companies." ORS 174.100.

[6] We acknowledge that ORS 242.320(1) defines "assistant custodian" as excluding part-time workers and those receiving an hourly rate of pay. Those exclusions from the designation "assistant custodian," do not, however, inform the inquiry whether the district must employ "custodians" pursuant to the text of the CCSL. It is that inquiry that we address in this case.

[7] Specifically, the 1901 act repealed, among other statutes, title IV of chapter XVI of the Laws of Oregon as compiled and annotated by W. Lair Hill in 1892. At section 2595, that title had provided for the election of three directors and a clerk for the school district. At section 2602(3), the title further provided, in part:

"3. The directors shall furnish their schools with fuel already prepared for use, chalk, brooms, blackboards, and erasers, stoves, window curtains, and other things necessary for the use of schools[.]"

school age, as shown by the last school census." The Codes and Statutes of Oregon, title XXXIII, ch I, § 3364 (Bellinger & Cotton 1901). At section 3389, the new law set out the duties of the school boards and, as relevant here, provided, in part:

> "The duties of school boards shall be:—
>
> "* * * * *
>
> "4.   They shall furnish their schools, from the common school fund, with fuel already prepared for use, chalk, janitor, brooms, blackboards, erasers, stoves, window curtains, reference books, library books and other apparatus for use in their schools: *Provided*, that the sum expended for this purpose shall not exceed fifteen per cent of the five-mill county school fund and the irreducible school fund apportioned to said district."

*Id.* at § 3389 (emphasis in original). That provision remained virtually unchanged until 1941, when the legislature amended it to read:

> "The general duties of the district school boards of the state of Oregon shall be as follows:
>
> "* * * * *
>
> "4.   They shall furnish their schools with supplies, equipment, apparatus and services essential to meeting the requirements of a standard school and may furnish such other supplies, equipment, apparatus and services as the board deems advisable."

Or Laws 1941, ch 155, § 1.[8] Thus, it is clear that the substance of what is now ORS 332.155(7) has governed the administration of schools by district school boards since the late nineteenth century. Both the Court of Appeals, *Walter*, 193 Or App at 367 n 11, and the district are incorrect in their assertions that that provision first became a part of Oregon

---

[8] As a result of the conversion from the Oregon Compiled Laws Annotated to the Oregon Revised Statutes in 1953, that provision became ORS 332.050(4). The statute later was renumbered ORS 332.105 in 1963, and, in 1965, the legislature moved the text of subsection (4) to ORS 332.155(4), *see Report of the Law Revision Subcommittee to the Legislative Interim Committee on Education: Proposed Revision of the Education Law* 135 (April 1964). ORS 332.155 subsequently was amended and several new subsections were added. As a result, what was subsection (4) in 1965, eventually became—and currently remains—subsection (7).

law in 1965. As a consequence, it also was incorrect to conclude that the later enactment indicated an intent by the legislature to provide the district discretion to avoid application of the CCSL to its custodial hiring decisions.

The 1901 act also included a section dedicated specifically to school districts of the first class, and, within that section, set out the duties of school boards in such districts. Those duties included "employ[ing] teachers, janitors, carpenters, etc." The Codes and Statutes of Oregon, title XXXIII, ch I, § 3408(2) (Bellinger & Cotton 1901). They became duties "to be exercised in [the district school boards'] discretion" in 1931. Or Laws 1931, ch 92, § 1. The legislature also authorized school districts of the first class to solicit bids from private parties for the provision of certain supplies and services in the event that the cost for such items would equal or exceed five hundred dollars:

> "In all such districts, when in the opinion of the board the cost of any lot of furniture, stationery, apparatus, fuel, buildings, or improvements or repairs to the same, will equal or exceed the sum of five hundred dollars, it shall be the duty of said board to give due notice, by publication in at least one daily newspaper published within said corporate limits, of their intention to receive bids for such lot of furniture, stationery, etc., and they shall determine the specifications for such bids and appoint the time and place for opening of all bids, which shall be public; and it shall be unlawful for any member of the school board to bid or to be an interested party in any bid before such board."

The Codes and Statutes of Oregon, title XXXIII, ch I, § 3417 (Bellinger & Cotton 1901). That provision remained the same, with the exception of a slight modification in punctuation, until 1951. The legislature later repealed that provision in 1975 as part of a wholesale revision of the statutes governing public contracts. Or Laws 1975, ch 771, § 33.

By 1937, the legislature also had enacted provisions governing school districts of the first class with a population of 20,000 or more school-aged children. OCLA § 111-1211; OCLA §§ 111-1401 to 111-1409 (1937). Specifically, at OCLA section 111-1211, the legislature provided that, in such school districts, the board of directors would consist of seven directors, but in all other districts of the first class, the board

would consist of five directors. That population requirement increased gradually over time. The present analogue to that provision is ORS 332.015, which provides, in part, that "[t]he board of directors of a school district with a population of 300,000 or more * * * shall consist of seven members."

The forgoing indicates that, by 1937, school boards in districts of the first class (1) had a duty to provide certain supplies and services[9] to their schools; (2) had the discretion to hire necessary personnel; and (3) had a duty to receive bids for "any lot of furniture, stationery, apparatus, fuel, buildings, or improvements or repairs to the same" when the cost of such items might "exceed the sum of five hundred dollars[.]" In short, the legislature conferred on school boards in districts of the first class the authority to contract for essential supplies and services related to the maintenance of school property. Furthermore, the legislature recognized that school districts with large student bodies required more supervision and administration than did smaller school districts.

The legislature also recognized a distinction between "employees" and "independent contractors" in other statutes. For example, at OCLA § 102-609, the 1931 Legislative Assembly defined the term "employe[e]" to mean:

"any individual who otherwise than as copartner of the employer or as an independent contractor renders personal services wholly or partly in this state to an employer who pays or agrees to pay such individual at a fixed rate, based on the time spent in the performance of such services[.]"

OCLA § 102-608 specifically had excluded "any state, county, municipal corporation, town or other governmental division" from the scope of the term "employer" for purposes of that scheme, but, even so, the legislature clearly had made distinctions between employees and independent contractors by 1937. The legislature apparently likewise had not defined the term "independent contractor," but at the time that the legislature passed the CCSL, this court understood that term to

---

[9] We base that conclusion on the text of Title XXXIII, ch I, § 3389 of the Bellinger & Cotton Code, which provided, in part, that school boards "shall furnish their schools * * * with[,]" *inter alia*, "chalk, *janitor*, brooms [and] blackboards[.]" (Emphasis added.)

mean " '[o]ne who, exercising an independent employment, contracts to do a piece of work according to his own methods, and without being subject to control of his employer, except as to the result of his work.' " *Streby v. State Indus. Acc. Com.*, 107 Or 314, 330, 215 P 586 (1923) (quoting *Scales v. First State Bank*, 88 Or 490, 496-97, 172 P 499 (1918)) "[T]he test for determining whether a person employed to do certain work is or is not an independent contractor, is the control which the employer reserves over the work and has the right to exercise. Where the person doing the work is an independent contractor[,] the will of the employer is represented in the result contracted for while the general control over means and methods is given to the contractor").

It was against that legal backdrop that, in 1937, the legislature enacted the CCSL. OCLA § 111-1501 set out the name of the act, and OCLA § 111-1502 set out its scope:

> "In all school districts of this state in which there is a population of 100,000 or more persons, according to the last federal census, *there hereby is created a civil service board with jurisdiction over the appointment, employment, classification and discharge of custodians and assistant custodians* in the employ of such school district. *Custodians hereby are defined as* employe[e]s of such school district, who shall have supervision of property, keeping the same in a sanitary condition and tending to the cleaning and operation of heating plants and other necessary work in the way of care and labor to keep the physical plants of the school board in maintenance and operation; and *assistant custodians hereby are defined as* those employe[e]s who work under such custodians' supervision. Any assistant custodian receiving less than $60 per month as a wage shall not be deemed to come within the provisions of this act."

(Emphasis added.) The provisions that followed set out, respectively, the number of commissioners who would constitute the board and the manner of their appointment, OCLA § 111-1503, a requirement that the board appoint a secretary, OCLA § 111-1504, and a requirement that all persons

already employed as custodians would become permanent employees without the need to take an examination, OCLA § 111-1505.

Furthermore, OCLA § 111-1506 provided:

"Upon the effective date of this act, the said civil service board shall classify, with relation to the character of work and the compensation attached thereto, all of the positions as custodians and assistant custodians in the service of the school board within the district. The places and employment so classified shall constitute the classified civil service of the school district, and *after taking effect of this act, no appointments or promotion to any such place or position shall be made, except as herein provided.*"

(Emphasis added.) OCLA § 111-1508 also prohibited certain persons from being eligible for appointment to a position:

"No person shall be eligible for examination and appointment unless he or she be a citizen of the United States and a resident of the said school district for at least one year immediately prior to applying for said examination. Such person must be able to read and write the English language. No person habitually using intoxicating beverages to excess or who has been an inmate of an insane asylum or who has been convicted of a crime involving moral turpitude shall be eligible for appointment."

The legislature revised that provision in 1979, and, as noted above, added a specific requirement that, before the civil service board approves an applicant for employment, the board must be assured that the applicant does not pose a danger to school children. Or Laws 1979, ch 738, § 3 (now ORS 242.550).

OCLA § 111-1509 conveyed all control over examinations to the civil service board, and OCLA § 111-1510 set out parameters for registering and ranking eligible candidates. OCLA § 111-1511 further required, in part:

"Whenever there shall be a vacancy in any position in the said classified civil service, the school board, or its designated representative, immediately shall notify the civil service board thereof. The civil service board thereupon shall certify to such appointing authority the names and

addresses of the three eligible candidates standing highest upon the register for the class or grade to which such position belongs[.]"[10]

For the reasons discussed below, the foregoing provisions demonstrate that, when it enacted the CCSL, the legislature intended to enact a comprehensive statutory scheme to govern the selection of custodial workers in school districts with "a population of 100,000 or more persons[.]" The 1937 Legislative Assembly also chose to confer upon the civil service board jurisdiction over the employment of such custodial workers before defining the terms "custodian" and "assistant custodian." The legislature then defined such personnel, in part, as "employe[e]s" of the school district. The question that we must resolve is whether the legislature's intent was to limit the persons to whom the CCSL would *apply*, rather than to *define the legal status* of custodial workers who the civil service board hired to fill vacant district positions.

Pursuant to ORS 174.010, this court must construe statutes in a manner that will give effect to all provisions at issue. We think that the choice of the 1937 Legislative Assembly to define the terms "custodian" and "assistant custodian" as "employe[e]s," taken with its mandate that, "after taking effect of this act, no appointments or promotions to any such place or position shall be made, except as herein provided[,]"[11] demonstrates that the legislature intended to define the legal status of such workers.

That proposition is supported by the fact that the legislature did not base the civil service board's authority on an employment relationship; *i.e.*, whether the individuals who perform custodial work within the school district are

---

[10] The provisions that followed limited the manner in which permanent employees could be discharged, OCLA § 111-1512, permitted the school district to suspend members of the classified civil service for a period not to exceed 30 days, OCLA § 111-1513, required the civil service board to provide a report to the school board annually, OCLA § 111-1514, granted the civil service board authority to conduct investigations, OCLA § 111-1515, and set out criminal penalties for noncompliance with the CCSL, OCLA §§ 111-1516 to 111-1517.

[11] At the time that the legislature enacted the CCSL, Webster's dictionary defined "appointment," in part, as the "designation of a person to hold an office[.]" *Webster's Int'l Dictionary of the English Language* 73 (unabridged ed 1907). Webster's dictionary also defined "position" to mean, "[t]he spot where a person or thing is placed or takes a place[.]" *Id.* at 1117.

employees of the school district. Instead, in creating the CCSL, the legislature invested the civil service board with authority at a much more fundamental level. As ORS 242.510 makes plain, the civil service board's authority does not begin with the type of worker used to fill a custodial position in a school district; instead, the civil service board's authority begins with the custodial positions themselves:

> "The civil service board shall classify, with relation to the character of work and the compensation attached thereto, *all positions in the service of the school board* within the district including those under the supervision of a custodian except those described in ORS 242.320(1)(a), (b) or (c). The positions so classified shall constitute the classified civil service of the school district."[12]

The legislature's reference to "all positions in the service of the school board" in the statute's text underscores several aspects of the CCSL that are important here. First, "positions" can exist even when they are vacant and regardless of the category of workers who ultimately fill them, be they employees, subcontractors, or even volunteers. In creating authority in the civil service board to classify such "positions" by character of work and compensation, the legislature essentially granted the civil service board authority over the *concept* of custodial positions within the qualifying school districts as much as it granted the civil service board authority to make the concept a concrete reality through a classified civil service. As a result, filling the positions at issue here with nonemployees would not divest the civil service board of its statutory authority, because, under the CCSL, the civil service board's authority begins with the position itself.

Second, the legislature could have referred to such positions as being "in the *employment* of the school board" when it drafted ORS 242.510, but it did not. Instead, the legislature drafted a statute that referred to positions "in the *service* of the school board." Giving the term "service" its

---

[12] The exceptions listed in ORS 242.320 are for workers who either (1) work less than eight hours per day; (2) work less than 12 months a year; or (3) receive an hourly pay rate. As we explain below, however, even those exceptions are subject to a degree of civil service board control in the hiring process.

plain meaning, the word is most properly understood in the context used here as simply "the performance of work commanded or paid for by another." *Webster's* at 2075. As a result of that broad definition, just as a "position" can conceivably be filled in a variety of ways—by employees, subcontractors, or volunteers—so too, the "service" to the school board provided by those positions can also be realized in a variety of ways, none of which appear limited to relationships based only on employment.

Simply put, ORS 242.510 invests custodial civil service boards with a broad authority that begins with board classification of the applicable custodial positions within a qualifying school district. That, in turn, translates into statutory authority over *all* appointments and promotions within the custodial classified civil service. ORS 242.520 provides:

"(1) No appointment or promotion to any position shall be made except as provided in the Custodians' Civil Service Law. All appointments to beginning employment positions in the classified civil service shall be made according to fitness, to be ascertained by open competitive examinations. All promotions in the classified civil service shall be made according to merit in service, fidelity in service and seniority in service.

"(2) No person shall be appointed or employed by a school board under any title not appropriate to the duties to be performed.

"(3) The appointing authority shall immediately notify the board of any appointment or discharge."

Of course, as ORS 242.510 makes clear, not all custodial positions are part of the classified civil service. Exceptions—listed in ORS 242.320(1)—exist for positions where workers either work less than eight hours per day, work less than 12 months a year, or receive an hourly pay rate. Still, even though such positions are not part of the classified civil service, the civil service board nevertheless maintains a degree of authority over who will fill them. As the text of ORS 242.550 suggests, applicants for custodial positions in general, not just those subject to the classified civil service, are subject to civil service board's scrutiny during the hiring process:

"The civil service board may require *an applicant for a custodial position* to furnish evidence satisfactory to the board of good character, mental and physical health, and such other evidence as it may deem necessary to establish the applicant's fitness, including any information concerning a criminal conviction for a crime involving the possession, use, sale or distribution of a controlled substance, sexual misconduct listed in ORS 342.143(3), theft or a crime of violence. *The board shall not approve the employment of any applicant unless the board is satisfied that the applicant poses no danger to school children.*"

(Emphasis added.) The legislative intent behind that provision is clear. ORS 242.550 prohibits the civil service board from approving any applicant's employment unless the board satisfies itself, from its review of the applicant's fitness, that the applicant poses no danger to the school children in the district's care. The beneficiaries of that requirement are the district school board and the public, especially parents and students. The district's proposed interpretation of the statute thwarts that legislative intent because it would authorize the district to contract with custodians who have never established, to the satisfaction of the civil service board, that they are fit for service and pose no danger to school children. That approach simply would eliminate the assurance of the safety of school children that ORS 242.550 was designed to secure.

Read together, the statutes discussed above establish the breadth of the civil service board's authority over custodial positions within a qualifying school district. At the same time, they underscore a conscious legislative choice to limit the authority of certain school districts in the course of filling those positions. Moreover, because the CCSL governs a specific subgroup of school district personnel and was enacted *after* the text of ORS 332.155(7)[13] first became a part of Oregon law, we deem the district's continued obligation to

---

[13] As noted above, ORS 332.155(7) provides:

"A district school board:

"* * * * *

"(7) Shall furnish the schools with supplies, equipment, apparatus and services essential to meeting the requirements of a standard school and may furnish such other supplies, equipment, apparatus and services as the board considers advisable."

provide "essential services" to its schools as being subject to the terms of the CCSL. *See Balzer Mch. v. Klineline Sand & Grav.*, 271 Or 596, 601, 533 P2d 321 (1975) (noting that, when the text of a statute is inconsistent with a previously enacted statute, the later statute will prevail).

We conclude that, when the 1937 legislature defined custodians and assistant custodians as "employe[e]s," it intended to define the legal status of those workers. That definition served to facilitate the civil service board's control over that workforce. Finally, ORS 242.520(1) requires the district to employ custodians pursuant to the terms of the CCSL.

The decision of the Court of Appeals is reversed. The declaratory ruling of the Employment Relations Board is reversed.

**BALMER, J.**, dissenting.

When the Portland Public School District (district) faced a severe budget shortfall in early 2002, it proposed to reduce expenses by, among other things, contracting with a private provider to obtain custodial services that were then being performed by district employees who were members of Service Employees International Union Local 140.[1] Whether that decision was wise from a financial, operational, or safety perspective is not, of course, an issue for this court to decide. The issue before us—the only issue—is whether Oregon law permits the district to obtain custodial services through a contract with a private service provider, rather than from individuals whom it hires as district employees. The Employment Relations Board concluded that Oregon law permitted the district's action, and the Court of Appeals agreed.[2]

A majority of this court, however, now holds that the Custodians' Civil Service Law (CCSL), ORS 242.310 to

---

[1] The district estimated that it would save $4.5 to $5 million annually by contracting for custodial services and that doing so would have a less negative impact on programs for students than other reductions that would be required if that contracting did not occur. The district eventually proposed a total of $40 million in budget cuts for the 2002-2003 fiscal year.

[2] Additionally, three different circuit court judges who considered the issue in different cases agreed that Oregon law permitted the district's action, as did the federal district court in yet another case involving the same issue.

242.640, bars the district from obtaining custodial services other than from district employees who are subject to the CCSL. Because the majority's conclusion lacks support in the specific wording of the CCSL and rests instead on inferences that stray from the legislature's stated intent in enacting that law, I respectfully dissent.

The CCSL was enacted in 1937 and applies only to the district. It created "a civil service board with jurisdiction over the appointment, employment, classification and discharge of custodians and assistant custodians in the employ of [the district]." ORS 242.330(1); *see also* Or Laws 1937, ch 355, § 2. As detailed in the majority opinion (and in the opinion of the Court of Appeals), the CCSL established a merit-based civil service scheme for the district's custodial employees, requiring competitive examinations for appointment and charging the board with responsibility for classifying the work and compensation of custodians and assistant custodians. Although the legislature has amended the CCSL since 1937, its essential features remain the same. The CCSL also defines "custodian" and "assistant custodian" as those terms are to be used in the statute:

"(1) 'Assistant custodian' means *any employee* who works under the supervision of a custodian except those who:

"(a) Work less than eight hours per day; or

"(b) Work less than 12 months per year; or

"(c) Receive an hourly rate of pay.

"* * * * *

"(3) 'Custodian' means *an employee* of the school district who has supervision of property, keeping it in sanitary condition and tending to the cleaning and operation of heating plants and other necessary work by way of care and labor to keep the physical plants of the school board in maintenance and operation."

ORS 242.320 (emphasis added). The CCSL imposes specific obligations on the civil service board, requiring it to make reports, hold competitive public examinations for custodial

positions, and prepare and keep a register. ORS 242.390 - 242.570. The law also provides that "[n]o appointment or promotion to any position shall be made except as provided in the [CCSL]." ORS 242.520(1).

Based on those and other provisions of the CCSL,[3] the district argues that the CCSL applies only to district "employees" who perform custodial services and that persons working for a private contractor are not subject to the CCSL because they are not district employees. The district further asserts that nothing in the CCSL requires that custodial services for the Portland public schools be performed by district "employees." Local 140 counters that the entire structure of the CCSL and the board that it creates assumes that custodial services will in fact be performed by district employees whose employment will be regulated by the CCSL.

Although Local 140 may be correct that the 1937 legislature "assumed" that most custodial services for the district would be performed by persons directly employed by the district, such an assumption merely reflected the circumstances of the time, including the district's limited authority to obtain services by contracting with private providers and the apparent rarity of that practice. However, nothing in the CCSL or in any legislative history to which the parties direct us suggests that the legislature intended to *require* the district to hire every person who performs custodial services in the Portland public schools as an employee.[4] On the contrary, the statute, as quoted above, gives the civil service board "jurisdiction" over "custodians and assistant custodians in the employ" of the school district, and then defines "custodians" and "assistant custodians" as "employees" of the district

---

[3] The CCSL contains a variety of additional provisions that the parties use to bolster their respective positions, most of which are discussed in the majority opinion, 339 Or at 415-16, 420-23 and in the Court of Appeals decision, *Walter v. Scherzinger*, 193 Or App 355, 360-69, 89 P3d 1265 (2004). The parts of the statute quoted in the text are the most central to the parties' dispute and provide a sufficient basis for delineating their opposing positions.

[4] In this court, Local 140 shifts ground slightly, arguing that the legislature not only "assumed" that all custodial services would be performed by district employees, but that the legislature "believed" that to be the case. In interpreting the CCSL, however, our focus must be on the legislature's intent as it is expressed in the statute itself, not on unwritten assumptions or beliefs that individual members of the legislature may have had.

who perform the duties described in ORS 242.320(1) and (3). Nothing in the text of the statute requires that every person who performs those duties must be hired by the district as an employee; neither does it bring within the compass of the CCSL persons who are not district "employees."

Even if Local 140 is correct in asserting that the legislature "assumed" or "believed" that all persons performing custodial services would be district employees, the corollary proposition that is critical to their position in this case—that the legislature also assumed that those employees would be subject to the CCSL—does not follow. Local 140 argues that ORS 242.520(1), by prohibiting any "appointment or promotion * * * except as provided in the [CCSL]," demonstrates that the legislature intended to bring within the scope of the CCSL not only every district *employee* who performs custodial services, but also persons *not employed* by the district who perform those services. That position is not supported by the CCSL.

The original CCSL excluded from its coverage "[a]ny assistant custodian receiving less than $60 per month as a wage * * *." Or Laws 1937, ch 355, § 2, and the current CCSL excludes, by excluding from the definition of "assistant custodian," any employee who works less than eight hours per day or less than 12 months per year or who receives an hourly rate of pay. ORS 242.320(1). Thus, nothing in the CCSL itself would prohibit the district from obtaining all of its custodial services by hiring part-time employees who would not be subject to the CCSL.

I also note in passing that the record in this case demonstrates that some custodial services in the district's schools are performed by persons who are not district employees, while others are performed by district employees who are not subject to the CCSL. The record identifies six contracts signed before the present dispute arose between the district and private providers of custodial services. The record also indicates that the district does, in fact, employ part-time assistant custodians and student custodians who do not come within the statutory definitions of "custodian" or "assistant custodian" quoted above and thus are not subject to the CCSL, even though they perform custodial services.

Finally, the parties have stipulated that approximately 75 district employees represented by an association of skilled trades unions perform work that involves keeping district property in a sanitary condition, cleaning and operating heating equipment, and otherwise maintaining district facilities. If Local 140's interpretation of the CCSL were correct, the district's existing practices—to which Local 140 apparently has not objected—of having some custodial services performed by district employees who are not subject to the CCSL and other custodial services performed by persons who are not district employees, would be unlawful.

It is striking that the majority takes a different approach from Local 140. It agrees with Local 140 that the CCSL applies to any worker who performs custodial services for the district, whether that worker is a district employee or an employee of a private contractor. The majority reaches that conclusion, however, on a basis that Local 140 did not argue, *viz.*, that, by using the word "employee" in ORS 242.320's definitions of "custodian" and "assistant custodian," the legislature did not intend to "limit" the persons to whom the CCSL would apply, but rather "to *define the legal status* of custodial workers who the civil service board hired to fill vacant district positions." 339 Or at 422 (emphasis in original). That is, rather than reading the statutory definition of custodian—that a custodian "means an employee of the school district" who has certain defined responsibilities, ORS 242.320(3)—in the ordinary sense to include only a person who is "an employee of the school district," the majority concludes that any person who has those defined responsibilities is a custodian, and, therefore, must have (or must be given) the "legal status" of an "employee." In my view, there is a reason that Local 140 did not advance that interpretation: That interpretation is unsupportable.

As noted, the 1937 legislation gave the civil service board "jurisdiction over the appointment, employment, classification and discharge of *custodians*," and, in the next sentence of the same section, provided that "*custodians* hereby are defined as *employees* of [the district] * * *." Or Laws 1937, ch 355, § 2 (emphasis added).[5] The only plausible way to read

---

[5] Those sentences now appear, with changes not relevant to this discussion, at ORS 242.330(1) and ORS 242.320(3), respectively.

that section is as an expression of the legislature's intent that the word "employee" *describe* those persons to whom the statute applies, rather than, as the majority would have it, to *prescribe* that the district hire as an employee any person who performs custodial services. *See Walter v. Scherzinger*, 193 Or App 355, 368, 89 P3d 1265 (2004) (legislature's use of word employee "was descriptive, based on contemporary reality, and not prescriptive").

The statute's words will not support the majority's conclusion that by *defining* a "custodian" for purposes of the CCSL as an "employee" who performs certain functions, the legislature intended to impose an affirmative obligation on the district. The majority states that "when the 1937 legislature defined custodians and assistant custodians as 'employe[e]s,' it intended to define the legal status of those workers." 339 Or at 426. The majority's approach, however, elevates a statutory definition—which ordinarily tells us the *meaning* of a particular word as it is used in a statute—into an affirmative requirement (that the district hire all custodians as employees) that appears nowhere in the statute. This court has rejected such an approach to statutory interpretation, stating that "[o]rdinarily the function of a definition section is not to impose duties but to specify the meaning of the defined term whenever it appears elsewhere in the statute." *Jackson County v. Bear Creek Authority*, 293 Or 121, 126, 645 P2d 121 (1982); *see also Amer. F. of L. et al. v. Bain et al.*, 165 Or 183, 205, 106 P2d 544 (1940) (statutory definition is device for shortening statute by "describing" certain class of cases).

For the reasons described above, the CCSL does not require the district to hire its own employees to provide custodial services, and I would hold that the district's proposal to contract out those services does not violate the Public Employee Collective Bargaining Act.

I respectfully dissent.

Carson, C. J., and Gillette, J., join in this dissent.