James SCHERZINGER
and Portland School District No. 1J,
*Respondents,*

*v.*

PORTLAND CUSTODIANS CIVIL SERVICE BOARD,
*Respondent,*

*and*

Tamara McWILLIAMS,
Henry Shambry, and 90 Civil Service Custodians,
*Appellants.*

STATE ex rel Tamara McWILLIAMS,
Henry Shambry, and 90 Civil Service Custodians,
*Appellants,*

*v.*

PORTLAND PUBLIC SCHOOL DISTRICT NO. 1J;
Multnomah County, Oregon; Portland Board of Education;
Marc Abrams; Lolenzo Poe; Sue Hagmeier;
Derry A. Jackson, Sr.; Debbie Goldberg Menashe;
Julia Brim-Edwards; Karla Wenzel;
and James Scherzinger,
*Respondents.*

PORTLAND PUBLIC SCHOOL DISTRICT, NO. 1J,
an Oregon Public School District,
*Respondent,*

*v.*

PORTLAND CUSTODIANS CIVIL SERVICE BOARD,
*Defendant,*

*and*

Donald W. STRONG;
David P. Vecsi; Lynda M. Anderson;
Mary J. Anderson; Robert L. Anderson;
Steven R. Armony; Glenn E. Armstrong;
Wayne L. Arneson; Daniel Arnold;
Phillip L. Bartlett; William K. Beatty;
Patrick S. Beckmeyer; William P. Blackmon;

Daniel E. Blanchard; Edward J. Borne;
Lonnie L. Bowden, Sr.; Gerald C. Brandon;
Shawn H. Briggs; John W. Brooks;
Sarah E. Brophy; Eric A. Brown;
John W. Bryant; Hugh A. Burgett;
William L. Camp; Parlor G. Campbell;
Richard R. Carlson; Robert H. Carron;
Clyde R. Chamberlain, Jr.; Huyen D. Chu;
Troy C. Classen; Robert J. Clausen;
Ray D. Clay; Marshall W. Collins;
Gordon C. Corda; Timothy J. Curtin;
Wayne A. Curtin; Larry D. Cushman;
Antonio L. Dasilva; Timothy D. Davidson;
Danny J. Davis; James L. Davis;
James R. Dean; Phyllis J. Dean;
Kenneth D. Deweese; Richard P. Dobas;
Carl A. Donaldson; Francis J. Duncan;
Matthew B. Dutton; Richard W. Ehrhart;
William C. Endicott; Daniel L. Esmond;
Ronald J. Fahey; Gary Ferns;
Edward E. Flagler; Lonnie D. Flemming;
Belinda G. Fosnot; Elliott R. Fosnot;
Michelle R. Fosnot; Steven R. Fraiser;
Mark W. Freimark; Kenneth D. Fry;
Felipe C. Fuentes; Jeffery W. Furlow;
James L. Granville; Donald D. Graves;
Clifford L. Green; Paul F. Grignon;
James W. Grinnell; David F. Guinn;
Hannelore Gyden; Douglas G. Halenbeck;
Mark A. Hamilton; Jeffrey C. Haner;
Brian G. Hardin; Bruce W. Harris;
Ronald L. Haselwood; Roger D. Hastings;
Robert A. Hazeltine; Kenneth L. Herring;
Duane R. Hill; Harold A. Holm;
Ronald Hoodye; Curtis D. Hughes;
Victoria R. Ibarra; Craig S. James;
Stetson N. James; Randall L. Jarvis;
Alan C. Jelkrem; Jack M. Jensen;
Brent L. Johnson; Howard S. Johnson;
Ray N. Johnson; Frank C. Jones;
Calvin B. Kaiser; Joseph G. Keenon;
Bertha M. Kirk; Richard L. Kreitz;

Keith E. Kvernvik; Drew M. Letang;
Lowell K. Linstrom; Douglas I. Lorenson;
Terry Q. Luper; Daniel J. Markey;
Richard G. Martin; Terry C. Martin;
Rodney D. Mathiesen; James P. McMahon;
Ken Migaki; Kevin G. Miller;
Bryce D. Mitseff; Frank E. Morgan;
Barbara J. Muller; Scott E. Myers;
Paul D. Neighorn; Bernard E. Nelson;
Michael A. Nelson; Nicholas W. Newcomer;
Thang V. Nguyen; Donald R. Niece;
Paul D. Nyman; Vincent O. Oniah;
Debi L. Paige; William R. Park;
Shirley A. Payton; Ann E. Pimentel;
John H. Pollard; Lee R. Pommerville;
John M. Pont; Thomas I. Posey;
Frank R. Powers; Kenneth P. Pray;
Clayton W. Price; Barry D. Pullen;
David B. Pullen; John R. Rider;
Charles J. Rinehart; Elizabeth Rodgers;
Mark A. Rogers; Richard R. Rogers;
Craig M. Rothschild; Alan L. Rudy;
Henry L. Schamel, Jr.; David P. Schieiger;
Mark J. Schnoor; Steven A. Scott;
Julian J. Sebastian; Samuel N. Shalkowsky;
Vincynthia Shepard; Mitsutoshi Shibuya;
Leon C. Slider; Kenneth W. Smith;
Pearlie M. Smith; David D. Steward;
Michael L. Strand; Ronald R. Streeter;
Thomas M. Summerfield; Randall B. Suva;
Bobby L. Sykes; Keven C. Test;
Michael A. Thomas; Raymond C. Thomas;
Cynthia J. Vanortwick; Dale A. Vanortwick;
Brad J. Vincent, Sr.; Michael F. Vodka;
Gerald D. Wallace; Derthal G. Walter;
Douglas K. Warner; Karen J. Waters;
Michael T. Webb; Michael A. Weinberger;
Dennis D. Wiley; David F. William;
James M. Williams; Major S. Willis;
Ronald Willoughby; Keith L. Witherspoon;
William R. Wolfe; Sui L. Wong Ao;
Kenneth A. Yambra; Mason L. Young;

Timothy G. Young,
Individuals (The "Individual Defendants"),
*Appellants.*

0208-08154, 0210-09876, 0302-01196;
A120712 (Control), A120713, A122865
(Cases Consolidated)

149 P3d 142

William D. Brandt and Mark E. Griffin for appellants.

William H. Walters, Bruce L. Campbell, and Miller Nash LLP for respondents James Scherzinger; Portland School District No. 1J.; Multnomah County, Oregon; Portland Board of Education; Marc Abrams; Lolenzo Poe; Sue Hagmeier; Derry A. Jackson, Sr.; Debbie Goldberg Menashe; Julia Brim-Edwards; and Karla Wenzel.

No appearance for respondent Portland Custodians Civil Service Board.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

BREWER, C. J.

**BREWER, C. J.**

The Supreme Court remanded these cases to us with instructions to reconsider them in light of *Walter v. Scherzinger*, 339 Or 408, 121 P3d 644 (2005). *Scherzinger v. Portland Custodians Civil Serv. Bd.*, 340 Or 483, 135 P3d 318 (2006); *Portland Public School District No. 1J v. PCCSB*, 340 Or 483, 135 P3d 318 (2006).[1] *Walter* and the cases on remand all arise from the decision of Portland Public School District No. 1J (the district) in 2002 to cease employing custodians in the district's schools and, instead, to arrange with an outside contractor for custodial services. In *Walter*, the Supreme Court reversed a declaratory ruling in which the Employment Relations Board (ERB) declared that the district had the legal authority to take that action.[2] The cases before us involve other challenges to the district's action.

In our original decisions in these cases we held that, under the doctrine of issue preclusion, ERB's declaratory ruling required us to affirm the trial court judgments in favor of the district. *Scherzinger v. Portland Custodians Civil Serv. Bd.*, 196 Or App 384, 103 P3d 1122 (2004); *Portland Public School District No. 1J v. PCCSB*, 198 Or App 11, 108 P3d 63 (2005). However, in *Walter* the Supreme Court held that the Custodians' Civil Service Law (CCSL), ORS 242.310 to 242.640, required the district to use its own employees to provide custodial services and, therefore, the district could not agree with an outside contractor to provide those services. *Walter*, 339 Or at 425-26. That holding eliminated the basis for our previous decisions. On reconsideration in light of *Walter*, we now reverse the judgments in these cases and remand them to the trial court.

The underlying facts are essentially undisputed. In early 2002, the district employed approximately 340 custodians, the great majority of whom were covered by the collective bargaining agreement (CBA) between the district and

---

[1] We have consolidated the cases on remand and now decide them in one opinion.

[2] We had previously affirmed ERB's ruling in our decision in *Walter v. Scherzinger (A118491)*, 193 Or App 355, 89 P3d 1265 (2004), *rev'd*, 339 Or 408, 121 P3d 644 (2005).

Service Employees International Union Local 140 (Local 140). As part of addressing a substantial financial shortfall that it anticipated for the 2002-03 school year, the district considered contracting out all custodial services rather than continuing to use its own employees. It offered to bargain with Local 140 over that proposal. Local 140 agreed to bargain over the issue but also asserted that the proposal was illegal and therefore was a prohibited subject for collective bargaining. *See Service Employees Int'l Union Local 503 v. DAS*, 183 Or App 594, 598, 54 P3d 1043 (2002) (any proposal otherwise prohibited by law is a prohibited subject of bargaining). When the district adopted a budget that was based on laying off all of its current custodians after the end of the 2001-02 school year and thereafter contracting for custodial services, Local 140 sought the declaratory ruling from ERB that was at issue in *Walter*. After ERB ruled that the district had the legal authority to contract for custodial services rather than employing its own custodians and, thus, that the proposal was a permissible subject of bargaining, Local 140 sought judicial review of that ruling.

The cases now before us involve challenges to the district's actual termination of the employment of the custodians.[3] In those challenges, the custodians rely on the statutory protection that the CCSL provides, not on their rights under their collective bargaining agreement with the district. The CCSL establishes a civil service system in any district to which it applies that covers those employees who provide custodial services in the district's schools. ORS 242.320; ORS 242.330.[4] It creates a civil service board (the board) within the district that has jurisdiction over "the appointment, employment, classification and discharge of custodians and assistant custodians in the employ of the school district." ORS 242.330(1).

The board's duties include holding competitive examinations, certifying candidates for appointment, and

_____

[3] The parties dispute whether the terminations were layoffs or dismissals. For the reasons that we describe below, we conclude that they were dismissals for purposes of the CCSL.

[4] The CCSL presently applies, and throughout its existence has applied, only to the Portland school district. The current version of ORS 242.330(1) applies only to school districts with populations greater than 300,000.

ensuring that all candidates pose no danger to school children. ORS 242.520 to 242.550. The district must fill all custodial vacancies from the list of candidates that the board establishes. ORS 242.560 to 242.570. After a one-year probationary period the custodian is a permanent employee who may not be dismissed except for cause. ORS 242.580 to 242.590; ORS 242.620. A dismissed permanent custodian may seek a hearing before the board. ORS 242.620. If the board grants a hearing, it will determine "whether the dismissal was or was not for political or religious reasons, or because of reasons of age as described in ORS chapter 659A, or was not made in good faith for the purpose of improving public service." ORS 242.630(1). If the board finds in favor of the employee, the district must reinstate the employee. ORS 242.630(2).

After ERB entered its declaratory ruling in favor of the district, the district and Local 140 bargained over the proposal to contract out custodial services but did not reach an agreement. The district then proceeded to implement its proposal by terminating all of its custodians, doing so in three rounds. The custodians terminated in the first round challenged the district's action before the board, arguing that the district had terminated them in violation of their protections under the CCSL. The board investigated their claims and ruled in favor of the custodians, ordering their reinstatement. The district then sought a writ of review in Multnomah County Circuit Court, challenging the board's ruling; in a separate action, the custodians sought a writ of mandamus requiring the district to implement it. The two actions were consolidated for trial and appeal. In our previous decision in *Scherzinger*, we held that ERB's decision that the terminations did not violate the CCSL precluded the board from deciding that issue differently. 196 Or App at 395-96. We therefore affirmed the trial court rulings that vacated the board's decision and denied the petition for a writ of mandamus.

When custodians who were terminated in a later round also sought relief from the board, the district sought a declaratory judgment that the board had no jurisdiction to investigate the dismissals and an injunction prohibiting it from proceeding. The trial court ruled in favor of the district.

In our previous decision in *Portland Public School District No. 1J*, we again relied on issue preclusion arising from ERB's ruling to affirm the trial court's decision. 198 Or App at 19-20.

The Supreme Court's decision in *Walter*, which reversed ERB's declaratory ruling and our decision affirming it, thus, has removed the foundation for our previous decisions in these cases, both by nullifying the ruling on which they were based and by rejecting the reasoning that was the basis for that ruling. It is now clear that the CCSL requires the district to provide custodial services only through its own employees whom it hires and retains in accordance with the CCSL. We must therefore consider the issues in these cases that we did not previously need to reach. Before doing so, however, we consider three issues that the district raises on remand, each of which, it asserts, shows that the board did not have jurisdiction to address the custodians' claims.

■ The district first asserts that ERB has exclusive jurisdiction over public labor law disputes and that the board, therefore, is without jurisdiction to give relief to the custodians. The district relies on cases such as *Ahern v. OPEU*, 329 Or 428, 434-35, 988 P2d 364 (1999), in which the Supreme Court stated:

> "PECBA[5] is a comprehensive regulatory scheme for resolving public sector labor disputes. * * * Viewed in the context of PECBA's comprehensive regulatory structure, * * * we have no doubt that the legislature intended ERB to have exclusive jurisdiction to determine whether an unfair labor practice has been committed. Accordingly, the trial court lacks jurisdiction to make such a determination."

The district points out that ERB has jurisdiction over bargaining during the term of a collective bargaining agreement and that PECBA expressly permits an employer to implement its proposal if the employer and union are unable to reach agreement. ORS 243.698. If the union objects to that action it may file a complaint with ERB asserting that the district has committed an unfair labor practice. ORS

---

[5] PECBA is an acronym for the Public Employees Collective Bargaining Act, ORS 243.650 to 243.782; ERB has jurisdiction over disputes arising under PECBA.

243.672(1). Local 140 originally sought a ruling from ERB that the district's proposal was a prohibited subject of bargaining. Now that the union has prevailed on that issue, the district appears to argue, it must seek any relief from ERB.

As the custodians point out, the difficulty with the district's argument is that in these cases the custodians do not assert any rights that arise under their CBA with the district or from other matters with which PECBA deals. Rather, they assert rights under a separate statutory scheme that the legislature expressly designed for their protection. The CCSL prohibits dismissals of custodians without cause independently of any rights that the custodians might have under a collective bargaining agreement. The board, not ERB, enforces the CCSL, and its jurisdiction over the terminations is thus at least concurrent with that of ERB. *See Boise Cascade Corp. v. Board of Forestry*, 325 Or 185, 191-93, 196, 935 P2d 411 (1997) (discussing primary and concurrent jurisdiction in the context of the jurisdiction of administrative agencies and courts). Accordingly, we need not decide whether ERB had exclusive jurisdiction to determine whether the district's proposal was a prohibited subject of bargaining under PECBA and whether the terminations constituted an unfair labor practice, including jurisdiction to craft an appropriate remedy if they did. Once the district actually terminated the custodians, the board also had jurisdiction, independently of ERB, to determine whether those terminations complied with the CCSL and to order the district to reinstate the custodians if they did not.

■    The district next argues, based on the terms of the CBA, that it did not dismiss the custodians but only laid them off. However, the issue that the board had to consider was whether the district dismissed the custodians within the meaning of the CCSL, not that of the CBA. The district itself states that the purpose of its proposal was "to eliminate the custodial employee positions of Local 140 members." Nevertheless, the district argues, under the CBA that action was a layoff rather than a dismissal because it was not a dismissal for cause. According to the district, any termination that is based on eliminating positions is a layoff rather than a dismissal under the CBA. The district apparently considers it irrelevant whether there is any likelihood that the dismissed

custodians will ever return to their former positions. On appeal, the district treats its decision to contract out for custodial services as permanent and does not suggest how it would ever call the custodians back from their supposed layoffs.

The board did not accept the district's arguments in this regard. Rather, it found that the district's action "permanently terminates the Complainants and places non-civil service employees of a private contractor to perform 'custodial services.'" Those actions, the board stated, constituted dismissals under the CCSL. We begin our evaluation of the board's conclusion by considering the terms of the statute. ORS 242.620 provides that no custodian "shall be dismissed" except for cause. The statute does not define "dismiss," so we look to the ordinary dictionary meaning of the term and to other clues in the rest of the CCSL. The most relevant dictionary definition of "dismiss" is "to send or remove from employment, enrollment, position, or office * * *." *Webster's Third New Int'l Dictionary* 652 (unabridged ed 2002). The dictionary points out that "discharge" more strongly suggests a termination that is permanent and for cause than does "dismiss." *Id.* Nevertheless, it is clear that dismissing an employee is more than simply laying the employee off because of a temporary lack of work. *See Webster's* at 1281 (defining the verb "lay off" as "to cease to employ (a worker) usu. temporarily because of slack in production and without prejudice to the worker-usu. distinguished from fire").

In the context of the CCSL, ORS 242.610 describes the concept of "lay off" as a "suspension." The statute provides:

> "If any employee in the classified service is suspended by reason of the closing of a school or lack of work to be done, the employee again shall be placed on the eligible list of the civil service board and shall have the first preference in the filling of any vacancy and shall be appointed according to seniority. If the school board opens any closed school, the employees employed in the building shall have first preference to their previous place of appointment."

A suspension of employment because of lack of work, thus, differs from a dismissal. The reason for a suspension is either

the district's decision to close the school where the custodian works or its need to suspend a custodian's employment because there is "lack of work to be done." Such a suspension will, as the term implies, be temporary. The suspended custodians will have preference for any custodial job that may become open in the district as well as the right to return to their previous positions if the district reopens a closed school. The statute thus assumes that the suspended custodian will probably regain employment. That assumption is consistent with the Supreme Court's conclusion in *Walter* that a fundamental requirement of the CCSL is that the district will employ its own custodians. Any suspension of employment will be temporary, lasting only until another position opens up.

The CCSL, thus, contemplates only two ways for involuntarily terminating a custodian's employment, either a suspension under ORS 242.610 or a dismissal under ORS 242.620. A suspended custodian has the rights that ORS 242.610 describes, while the district can dismiss a custodian only for cause. The district does not assert that it terminated the custodians because it closed the schools where they worked or because there was a lack of work for them to do. Even if it were to argue that there was a lack of work for its own employees to do, it could not assert that there was no work for anyone to do. The district in fact contracted for others to perform the same work that the terminated custodians had previously performed. The terminations, thus, did not carry the probability of reemployment that was necessary for them to be suspensions under ORS 242.610.

If the district did not suspend the custodians, thus, it must have dismissed them. That description of the district's action is the only one that is consistent with both the statute and the economic reality of the custodians' situation. Only that description recognizes that the district did not ever intend to restore them to their positions as its employees.[6]

---

[6] Our conclusion is consistent with, but not based on, OAR 839-001-0430(1), which provides that, for the purposes of the statutes concerning the payment of wages, laying an employee off with no reasonable expectation of returning to work is equivalent to a termination of employment.

■     Finally, the district argues that the board exceeded its authority by second-guessing the district's policy decision about how best to use its limited resources. It points out that the board found that the district's decision to terminate the custodians was not made in good faith for the purpose of improving the public service, a finding that was necessary for the board to conclude that the terminations were without good cause.[7] The problem with the district's argument is that it did not have the discretion to make a policy decision that was unlawful. The board's role under the CCSL, and what the board actually did, was not to evaluate the district's decision about how to use its limited resources. Rather, the board's role and action was to evaluate the legality of the district's dismissal of the custodians. It was within the board's authority to conclude that the district did not have the legal authority to do what it did and to order it to take the corrective action that the CCSL requires. *See* ORS 242.330(1) (conferring on the board jurisdiction over "the discharge of custodians" in the employ of the district). *Walter* confirms that the board correctly concluded that the district's action was unlawful and that that conclusion supports the board's determination that the district did not act in good faith for the purpose of improving the public service.

■     In different terms, the district's argument on appeal, like its challenge before the trial court, is logically understood as an assertion that substantial evidence did not support the board's finding. *See Frazier v. Minnesota Mining and Manu.*, 82 Or App 328, 331, 728 P2d 87 (1986), *rev den*, 303 Or 74 (1987) (existence of good faith is a question of fact); ORS 183.484(8)(c) (describing standard for judicial review of administrative agency findings of fact). Substantial evidence exists when the record, viewed as a whole, would permit a reasonable person to make that finding. *Id.*

Typically, cases before the board under the CCSL will be individual cases of individual employees. In that

---

[7] ORS 242.630(1) provides that the board's investigation is limited to determining whether the dismissal was "for political or religious reasons, or because of reasons of age as described in ORS chapter 659A, or was not made in good faith for the purpose of improving the public service." There is no evidence to support a finding that the dismissals were for political or religious reasons or were based on the custodians' ages.

context, the issue of good faith under ORS 242.630 ordinarily will refer to the good faith of the district's decision that a particular employee's conduct constituted cause for dismissal under ORS 242.620. In this case, by contrast, the employees' conduct is not in issue. Rather, the question is whether the district's policy decision furnished a permissible basis for the terminations. That policy decision, however, was unlawful. An unlawful policy decision certainly cannot furnish "cause" for dismissal within the meaning of ORS 242.620. Accordingly, it is difficult to conceive how an unlawful policy decision to dismiss the custodians could be upheld if it were based on a subjective purpose to improve the public service. Even if such an anomaly were possible, though, that is not the issue before us. Rather, the question is whether substantial evidence supports the board's finding. We conclude that it does.

Because it is often difficult to determine by direct evidence whether a person or entity has acted in good faith for a particular purpose, indirect or circumstantial evidence often provides the only practical means of making that determination. All persons are presumed to know the law that is relevant to them. *Bartz v. State of Oregon*, 314 Or 353, 359-60, 839 P2d 217 (1992); *Dungey v. Fairview Farms, Inc.*, 205 Or 615, 621, 290 P2d 181 (1955). Evidence that an act was done without lawful cause constitutes circumstantial evidence that it was not done in good faith for the purpose of improving the public service. In this case, the district's decision to dismiss all of its custodial employees without any lawful cause violated the fundamental purpose of the CCSL, expressed in ORS 242.620, that permanent custodians be protected from termination without cause. Substantial evidence thus supports the board's finding that the district did not dismiss the custodians in good faith for the purpose of improving the public service when the basis for the dismissals was unlawful.

■　　We now turn to the specific issues in the cases on remand. In doing so, we will not revisit our previous decisions except to the extent that the Supreme Court's decision in *Walter* affects them. We begin with the district's petition for a writ of review of the board's order requiring the reinstatement of the custodians who were dismissed during the first round and of the custodians' petition for a writ of mandamus

enforcing that order. In their first assignment of error, the custodians argue that the trial court erred in granting summary judgment to the district in both cases based on issue preclusion arising from ERB's ruling. After *Walter*, it is clear that the trial court erred; once ERB's ruling ceased to be effective, it could not have preclusive effect. There is no alternative basis for affirming the trial court's action on the motions.

The custodians' second through fifth assignments of error concern issues that we have either resolved in our previous discussion or that the decision in *Walter* does not affect.

■ In their sixth assignment of error, the custodians assign error to the trial court's denial of their motion for summary judgment on their petition for a writ of mandamus.[8] A writ of mandamus is available

"to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust or station; but though the writ may require such court, corporation, board, officer or person to exercise judgment, or proceed to the discharge of any functions, it shall not control judicial discretion. The writ shall not be issued in any case where there is a plain, speedy and adequate remedy in the ordinary course of the law."

ORS 34.110. The district's duty in this case is clear. ORS 242.630(2) provides that "[i]f the board finds that the employee is entitled to reinstatement, it shall report its findings in writing to the school board, *whereupon the employee shall be reinstated.*" (Emphasis added.) The statute does not confer any discretion on the district to refuse to comply with the board's order or otherwise to exercise its judgment in that regard. Because none of the challenges that the district has made to that order is meritorious in light of *Walter*, the custodians are entitled to have the order enforced. There is no plain, speedy, and adequate legal remedy other than mandamus for doing so. The trial court erred in denying the custodians' motion for summary judgment.

---

[8] The custodians do not assign error to the trial court's rulings on any motions for summary judgment that they may have made concerning the writ of review.

Finally, we consider the action for declaratory and injunctive relief that the district brought against the board and against custodians who had been dismissed in later rounds than those involved in the writ of review and mandamus cases. The district brought the declaratory action after the board began proceedings to investigate the later terminations. The trial court, relying on ERB's ruling, declared that the board had no jurisdiction to consider the terminations and enjoined it from doing so. We originally affirmed that judgment, also relying on ERB's ruling in doing so. *Portland Public School District No. 1J*, 198 Or App at 20. Again, *Walter* both undercuts the basis for our previous decision and makes it clear that the trial court's judgment was wrong in substance. The board had the authority to investigate the later terminations for the same reason that it had the authority to investigate and determine the validity of the original terminations. Accordingly, the trial court erred in entering summary judgment for the district. On remand, the trial court should enter a judgment that declares the parties' rights on the issues in dispute consistently with this opinion. *See Beldt v. Leise*, 185 Or App 572, 576, 60 P3d 1119 (2003) ("If there is a justiciable controversy, the plaintiff is entitled to a declaration of its rights, even if that declaration is directly contrary to what it believes its rights to be.").

Case No. A120712 reversed and remanded; Case No. A120713 reversed and remanded with instructions to issue writ of mandamus requiring district to comply with order of civil service board; Case No. A122865 reversed and remanded with instructions to declare parties' rights consistently with this opinion.